(Opinion published 56 N. W. Rep. 58.)

PETER WOLFORD *vs.* CRYSTAL LAKE CEMETERY ASS'N.

Argued July 11, 1893.    Affirmed Aug. 21, 1893.

### The Purpose of a Cemetery is Public.

The purposes for which alone cemetery corporations may be organized under our laws are public, rather than private.

### Lands Platted and Used to Bury the Dead are Dedicated to a Public Use.

Lands acquired by such a corporation, and platted pursuant to the statute for cemetery purposes, the plat being recorded, and the land to some extent having actually been used for burials, are thereby dedicated to the purpose, exclusively, of the burial of the dead.

### Lands so Dedicated and Used Cannot be Mortgaged.

After such dedication the corporation is without power, for reasons in which the public is concerned, to convey any of such lands, except for the exclusive purpose of burials, or to mortgage the same. Its mortgage is wholly void, and the doctrine of estoppel is not applicable to preclude the corporation from asserting its invalidity.

Appeal by plaintiff, Peter Wolford, from an order of the District Court of Hennepin County, *Henry G. Hicks*, J., made March 22, 1893, denying his motion for a new trial.

The defendant, the Crystal Lake Cemetery Association, was organized as a corporation on October 20, 1882, under 1878 G. S. ch. 34, title 5.    It purchased of S. H. Wood, June 7, 1883, the northeast quarter of the southwest quarter of section four (4) T. 29, R. 24, north of, and near Minneapolis.    On February 2, 1886, the corporation by its board of trustees surveyed and platted the whole of the land as a cemetery, and caused the plat to be certified, acknowledged and duly recorded.    The certificate stated that the land was to be occupied exclusively as a cemetery and purposes necessary or proper therewith, and that the corporation thereby dedicated the same forever to that purpose.    About this time the forty acres was inclosed by a good substantial fence.    On October 30, 1888, the Cemetery Association owed plaintiff $5,000, for money borrowed and used in paying its debts and making improvements on the property.    On that day it mortgaged the northeast quarter of the forty acres to him to secure this debt.    The president of the corporation told plaintiff that this ten acres had not been platted or actually used for burial purposes.    On January 8, 1890, he foreclosed the mortgage under a power of sale therein, bid in the ten acres for $5,740.80, and received the sheriff's certificate of sale.    The land was not redeemed, and on February 5, 1892, plaintiff brought this action of ejectment to recover possession, and damages for withholding it.    The defendant answered, stating these facts, and claiming that the mortgage and its foreclosure were void.    The trial court so held, and ordered judgment for defendant.    Plaintiff moved for a new trial.    Being denied, he appeals.

*Boardman. & Boutelle,* for appellant.

1878 G. S. ch. 34, title 5, §. 242, provides that these associations shall have the legal powers and privileges, and be subject to the liabilities and restrictions respecting corporations.    Corporations have implied authority to borrow money and incur debts for the purpose of accomplishing their legitimate purposes unless the contrary be expressly provided, and the authority to borrow money includes authority to give a written acknowledgment of indebt-

edness in the usual form. The creation of the indebtedness was therefore *intra vires*. But the strenuous contention upon the part of the defense is, that the execution of the mortgage was *ultra vires*, that nothing passed thereby and plaintiff acquired no interest in the land thereunder. Conceding, for the sake of argument, that the execution of the mortgage was *ultra vires*, defendant is not in a position to avail itself of this fact as a defense. The transaction is executed and defendant has received and retained its benefits. We have therefore nothing to do with the question of *ultra vires* as applied to executory contracts. *Bradley* v. *Ballard*, 55 Ill. 413; *Witter* v. *Grand Rapids F. M. Co.*, 78 Wis. 543; *Wright* v. *Hughes*, 119 Ind. 324; *Hays* v. *Gallion Gas Light Co.*, 29 Ohio St. 330; *National Bank of Xenia* v. *Stewart*, 107 U. S. 676; *Holt* v. *Winfield Bank*, 25 Fed. Rep. 812; *Town Co.* v. *Morris*, 43 Kan. 283; *National Bank* v. *Matthews*, 98 U. S. 621.

The defendant claims that filing of the map or plat of the cemetery, according to the provisions of the statute, operated to impress upon this land a perpetual use for purposes of a burial ground. That, in consequence thereof, the land could not be conveyed freed of such use, and that the mortgage was therefore a nullity. Assuming the correctness of these premises, does the conclusion logically follow? If the land was impressed by law with this use, defendant held it subject thereto. Its mortgage, therefore, purporting to convey a greater interest than it had in the premises, would not be for this reason void, but would be operative to the extent of defendant's interest therein. Its grantee would take the land subject to the same use. Under this construction, plaintiff would succeed to the proprietorship of the lands embraced in the northeast quarter of the forty-acre tract, holding them as defendant held them, for the purpose of, and subject to use for burial. *Palmer* v. *Cypress Hill Cemetery Ass'n*, 122 N. Y. 429; *Seymour* v. *Spring Hill Cemetery Ass'n*, 16 N. Y. Supp. 94; *New York Bay Cemetery Ass'n* v. *Buckmaster*, 49 N. J. Law, 449.

The defendant is a strictly private corporation, in which the public have no interest whatever. *In re Deansville Cemetery Ass'n*, 66 N. Y. 569.

*Wilkinson & Traxler,* for respondent.

The powers granted by our statute to such a cemetery association are such, and only such, as are necessary to enable it to perform its public duty or public trust. All others are withheld. Its officers and agents are trustees of an express statutory trust, with all their powers and duties defined and limited by the statutes. The statute declares the association to be for a public use, by granting it the right to exercise the power of eminent domain, as a means of acquiring land to use in the fulfillment of the single purpose of its existence, and the right of eminent domain can only be exercised for a public use. *Evergreen Cem. Assoc.* v. *Beecher,* 53 Conn. 551; *Balch* v. *County Com'rs,* 103 Mass. 106; *Edgecumbe* v. *Burlington,* 46 Vt. 218.

The doctrine of *ultra vires* and the authorities cited by the plaintiff have no application to the case at bar. The doctrine of *ultra vires,* in a strict sense, and as applicable to this case, applies to acts which are not within the scope of the powers of the corporation to perform under any circumstances. This distinction is made in the cases. 2 Beach, Corp. §§ 422, 438, 439; Bigelow, Estoppel, 466; Green's Brice's Ultra Vires, 550; *Miner's Ditch Co.* v. *Zollenbach,* 37 Cal. 543; *McPherson* v. *Foster,* 43 Iowa, 48; *Bissell* v. *Michigan, S. & N. I. R. Co.,* 22 N. Y. 258; *Stewart* v. *Erie & Western T. Co.,* 17 Minn. 372, (Gil. 348.)

The plaintiff argues that defendant has ratified the acts of its agent in mortgaging its cemetery, by acquiescing and by failing to object. The act under consideration, being forbidden by the statute, is incapable of ratification. *Thomas* v. *Railroad Co.,* 101 U. S. 71; *Salem Mill Dam Co.* v. *Ropes,* 6 Pick. 23; *Martin* v. *Zellerbach,* 38 Cal. 300.

The record shows that the tract has been expressly dedicated to cemetery purposes. Having been duly dedicated, accepted and used, it is impossible for the defendant to abandon it, or to appropriate it to any other or different use. *Wilder* v. *City of St. Paul,* 12 Minn. 192, (Gil. 116;) *Hunter* v. *Trustees,* 6 Hill, 407; *City of Cincinnati* v. *Lessee of White,* 6 Pet. 431.

DICKINSON, J.   Prior to June, 1883, this defendant was, and ever since has been, an incorporated cemetery association, organized pursuant to 1878 G. S. ch. 34, tit. 5.   In that month and year it acquired the title to a tract of land of forty acres, ten acres of which has become the subject of this action; the ten acres comprising the northeast quarter of the forty-acre tract.   In the year 1886 the corporation had the entire forty-acre tract platted into lots, avenues, and walks, and the plat thereof, showing that the land was thereby dedicated as a cemetery, to be used exclusively for the burial of the dead, was then recorded.   It was designated. "Crystal Lake Cemetery."   After that, and in October, 1888, the corporation became indebted to the plaintiff for money loaned to it,. and by it used in paying its debts, and in laying out and improving the cemetery grounds.   This indebtedness was evidenced and secured by a promissory note of the corporation, and by a mortgage to the plaintiff of the ten acres in question, executed pursuant to a resolution of the defendant's board of trustees.   The plaintiff was induced to accept the note and mortgage securing the same by representations of the defendant's officers to the effect that this ten-acre tract had not been laid out as a part of the cemetery, or actually devoted to or used for burial purposes.   The representations were made in good faith, as the court finds, but were untrue, and the plaintiff was deceived thereby.   In fact, not only had the platting and dedication, as above stated, been made and recorded, but the whole forty-acre tract had been inclosed by a fence, which on one side, at the entrance, bore the name "Crystal Lake Cemetery." Thirty-four burials had been made on this ten acres, but close to the south line thereof; and a temporary vault had been erected partly on the same land.   That part of the forty acres lying south of the ten acres had been laid out and was being used for purposes of burial.   The improvements which had been made were almost wholly confined to that part of the grounds.   In 1890 the plaintiff foreclosed his mortgage by the statutory exercise of the power of sale, he being the purchaser at the foreclosure sale.   No redemption was ever made.   This action involves the issue of title as affected by the mortgage and its foreclosure.   The real questions are whether the defendant had power to mortgage the

property, and, if not, whether it is precluded from asserting its want of power. It was decided in the District Court that the mortgage was void. We concur in that view of the case.

The statute contains provisions respecting private cemeteries, but to them it will not be necessary to refer. The purposes for which cemetery corporations may be organized are public, rather than private, and the land acquired by such corporations, and devoted to the purposes of burial, are held in trust for public, rather than private, use. Every community needs, and ordinarily has, one or more places set apart and kept for the general burial of the dead. The providing and maintaining of such cemeteries is a matter of public concern, in the same sense as is the establishing and maintaining of roads or parks. The duty or power of doing this may properly be imposed or conferred upon towns, villages, or other political divisions of the state, as is done by our general laws defining the power of such municipal bodies; or, as has been done in the law above cited, the formation of corporations for that purpose may also be authorized. The purpose is equally public whether the one agency or the other is employed for its accomplishment, and in either case lands once legally devoted to and used for burial become appropriated to a public purpose, in such a sense that the power of the body in which the legal title may rest, to use or alienate the same, is restricted. The public character of such corporations, and of the purposes to be subserved by them, as well as the general inalienability of lands legally dedicated to and used for burials, may be asserted, not merely because of the nature of the subject, but because the statute justifies it. The one purpose for which such corporations may be organized is, as expressed in 1878 G. S. ch. 34, § 239, the "procuring and holding lands to be used exclusively for a cemetery or place for the burial of the dead." Substantially the same language is used in section 249, in defining the powers of such corporations. The power of eminent domain is conferred upon them, to be exercised, when necessary, to enlarge their cemetery grounds. Their lands are exempt from taxation, in order that the same may be perpetually maintained as places for burial. *State* v. *City of St. Paul*, 36 Minn. 529, 531, (32 N. W. Rep. 781.) The law provides for the surveying and platting of the lands, and

the recording of such plats, after which the trustees are empowered to sell and convey lots as designated on the plat, but "every conveyance of any such lot shall be expressly for burial purposes, and no other." The proceeds of sales are to be applied to the payment of any debts incurred by the association in the purchase of cemetery grounds and property, and in the improving and necessary care and management of the same, "and for no other purpose." No purpose of private gain or benefit is contemplated by the law, but only the accomplishment, through such corporate agencies, of the same public purposes which, in the absence of such a statute, or in the event of no such corporations being organized, would generally be accomplished by the exercise of powers conferred upon towns, villages, and cities.

It is unnecessary to say without qualification that such corporations have no power to convey or to mortgage any lands which they may have purchased, but which have not been otherwise legally devoted to use as a place for the burial of the dead; nor need we undertake to say whether the mere making and recording of a plat for cemetery purposes would constitute such an appropriation or dedication of the platted lands to the purposes of burial as would have the effect to limit the power of disposal which the corporation might otherwise have, although we are inclined to think that such would be the effect of the platting in accordance with the statute. We do hold that when lands have been thus legally platted, the plat recorded, and the platted lands to some extent actually used for burial, the premises are to be deemed to have been effectually and exclusively devoted to such uses, and that the general power of alienation is restricted and suspended, at least while such dedication remains in force. Whether the platting and dedication may be vacated by judicial proceedings instituted for that purpose it is not necessary to consider. The statute contemplates the laying out and dedication of considerable tracts of land for cemetery purposes. It is to be limited to one hundred and sixty acres in extent. The making and recording of plats of the land acquired, "or such portions thereof as may from time to time be required," is to be done before and in anticipation of actual use. This would, of course, always embrace land for the most part unoccupied by graves, and the

legal appropriation or dedication to the purposes of sepulture is not limited to the lots on which burials may have been made. The "platted tract" is thus dedicated, at least when any part of it has been actually used for burials. "Every conveyance of any such lots shall be expressly for burial purposes, and no other," is the language of the statute. It is contrary to the policy of the law, as indicated in its express language, to allow the corporation to convey or alienate, except for such purposes, any part of the land thus appropriated, in the manner prescribed by the statute, exclusively for the burial of the dead. Nor can the association, by its own act of alienation, divest itself of the trust which it has assumed under the law over the cemetery once established. The defendant was powerless, when this mortgage was executed, to sell without such restriction, or to mortgage a lot, or any number of lots, even to raise money for the payment of its debts, or to carry on its proper work. Upon grounds of public policy, for reasons which directly and primarily concern the public, the power of the corporation to convey away or to mortgage the trust property was expressly restricted; hence the mortgage was absolutely void. As it was wholly beyond the power of the corporation to thus mortgage its cemetery lands, so it could not validate or give legal effect to its void act by ratification, or by acceptance of benefits thereunder. The doctrine of estoppel is not applicable, as it might be if the corporation were one created for the accomplishment of private, rather than public, purposes, or if the defect consisted only of some irregularity in the exercise of a power. The principle of estoppel cannot be applied, so as to subject the public (not merely the corporation) to the very consequences which the restriction of the power of this public agent was intended to prevent. This effect of the want of corporate power in respect to transactions of public concern has heretofore been recognized in this court, and is in accordance with numerous decisions elsewhere. *Borough of Henderson* v. *County of Sibley,* 28 Minn. 515, (11 N. W. Rep. 91;) *Newbery* v. *Fox,* 37 Minn. 141, (33 N. W. Rep. 333;) and see *Stewart* v. *Erie & W. Transp. Co.,* 17 Minn. 372, 399, 400, (Gil. 348;) 1 Dill. Mun. Corp. 457; 2 Dill. Mun. Corp. 969, 969a; 1 Beach, Priv. Corp. 217, and cases cited. While, doubtless, the plaintiff may avail himself of a

remedy, the foreclosure of the mortgage was unavailing. The mortgage was void, and the title was not transferred thereby.

Order affirmed.

(Opinion published 56 N. W. Rep. 56.)