OAKLAND CEMETERY COMPANY V. PEOPLES CEMETERY
ASSOCIATION ET AL.

No. 902. Decided May 31, 1900.

### 1. Cemetery—Public Use—Dedication.

A cemetery corporation organized under Revised Statutes, article 642, section 5, subdividing its land into burial lots, and having plat of same recorded, thereby dedicates such property to public use as a place of burial for the dead. (P. 574.)

### 2. Cemetery Company—Status of Property.

After the dedication of its land by a cemetery company to public use as a burial place the legal title remains in the corporation only for the purpose of conveying the lots to those who desire to use them for the purpose of burying the dead; no power is given the corporation by the statute to convey the property for any other purpose; and the fact that the subdivisions are made unchangeable and the power to convey restricted to "lot or lots * * * for the purposes of sepulture" (Revised Statutes, article 716) limits the corporation's powers to convey to the quantities and uses named. The company by such dedication surrenders its fee simple title and becomes a trustee to carry out the purposes enumerated in the statute. (P. 574.)

### 3. Same—Debts—Execution.

A cemetery company, under our statute, has no power to create debts on the faith of the lands dedicated to burial purposes, and the sheriff no power to sell such lands under execution against it, though the purchasers should form or convey to another corporation to carry out the trust. (P. 575.)

### 4. Same—Case Stated.

A cemetery company created under Revised Statutes, article 642, subdivision 5, divided its lands, recorded plat, and sold lots for burial purposes, as authorized by Revised Statutes, articles 715-717. Held, that the unsold lots were not subject to sale under execution against the company; nor could the purchasers at such sale transfer title to a new company organized under the statute to carry out the same trusts. (Pp. 571-575.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

*Cockrell & Muse, Harris, Etheridge & Knight,* and *Crawford & Crawford,* for appellant.—Land dedicated for cemetery purposes and laid out, mapped and platted, and used and occupied as a public burying ground is not subject to seizure and sale under an ordinary execution issued on an ordinary moneyed judgment. Freeman on Ex., 2 ed., sec. 172, pp. 475, 476; 3 Am. and Eng. Enc. of Law, 1 ed., 58, note 1; Brown v. Lutheran Church, 23 Pa. St., 490; Wolford v. Cemetery Assn., 56 N. W. Rep., 56; Louisville v. Nevin, 10 Bush, 551; Hagaman v. Dittmar, 24 Kan., 42; Railway v. Indianapolis, 12 Ind., 620.

The Oakland Cemetery Company being a quasi public corporation, and the land in controversy having been platted and the plat recorded, and having been dedicated to the public as a burying ground, and many bodies having been buried therein, and being no more than was necessary and proper for the purposes for which the cemetery company was chartered and organized, could not be sold under an execution at law. That the cemetery is a public or quasi public corporation: Cemetery

Assn. v. City of New Haven, 21 Am. Rep., 643; Lewis on Em. Dom., sec. 272, p. 359, sec. 170, pp. 243-4; Evergreen Assn. v. Beecher, 53 Conn., 552; 4 Lead. Cases Am. Law of Real Prop., 446-448; Cemetery Co. v. Drew, 36 S. W. Rep., 804. The cemetery company being a public or quasi public corporation, its land necessary for cemetery purposes was not subject to execution. City of Palestine v. Barnes, 50 Texas, 552; Overton Bridge Co. v. Means, 29 Am. St. Rep., 514, and note; 6 Thompson, Corporations, secs. 7848, 7849, 7853, 7854.

Under the terms of the deed of dedication the Oakland Cemetery Company had no interest in the land which could be sold under execution. Chase v. Savings Bank, 89 Texas, 316; Barkley v. Lane, 6 Bush (Ky.), 589; Williamson v. Yager, 34 Am. St. Rep., 184.

After the execution and record of the deed of dedication and map, and after the interment of many bodies in said cemetery, the Oakland Cemetery Company had no power to dispose of said property except by lot or lots and for the purpose of sepulture only. The company having no power to convey the land to E. O. Tenison and Guy Sumpter in payment of the judgments in favor of Bookhout, the investment company, and the bank, the property could not be sold under executions issued upon said judgments. Sayles' Stats., arts 715-717; Mosler v. Tucker, 87 Texas, 96; Coombs v. Jordan, 22 Am. Dec., 249; Bruce v. Nicholson, 26 Am. St. Rep., 562; Hagaman v. Dittmar, 24 Kan., 42; Weitenberg v. Truman, 58 Cal., 63.

Having dedicated the land to the public as a burying ground forever, the Oakland Cemetery Company retained no interest in the land itself, but only an interest in a part of the proceeds of the sale of lots in the cemetery. Therefore the land was not subject to sale under an execution against the cemetery company. Chase v. York Co. Savings Bank, 89 Texas, 316; Wolford v. Crystal Lake Cem. Assn., 56 N. W. Rep., 56.

Land dedicated to a public use is removed from commerce and individual appropriation. Lewis v. San Antonio, 7 Texas, 322. A cemetery association has no power to create a lien upon its land actually used for cemetery purposes. Houston Cemetery Co. v. Drew, 36 S. W. Rep., 804; Beatty v. Kurtz, 2 Peters, 566; Boyce v. Kalbaugh, 28 Am. Rep., 464.

After the execution of the deed of dedication the Oakland Cemetery Company was simply a trustee for the purchasers of lots in the cemetery, and as long as the land was used as a burying ground had the right to the possession of the same, and was in duty bound to execute the trust according to its terms. Weisenberg v. Truman, 58 Cal., 69; Close v. Glenwood Cemetery, 107 U. S., 466.

*McCormick & Spence* and *Henry & Henry*, for appellees.—Unsold lots belonging to a cemetery corporation, either public or private, in Texas, though the cemetery tract has been divided into lots, mapped, and occupied as a quasi public burying ground, are subject to seizure and sale

under execution. Rev. Stats., arts. 651, 5065; Constitution, art. 16, secs. 49, 50, 51.

Under the terms of its deed of dedication and subject thereto, the Oakland Cemetery Company did have remaining, or undedicated, an interest in the cemetery tract of land that was subject to execution sale.

After its execution and record of the deed of dedication and map, and after the interment of many bodies in the cemetery, the Oakland Cemetery Company had power to dispose of all of the unsold land, in bulk or otherwise, but strictly subject, in the hands of the purchaser, to all of the obligations and incidents that it was charged with in the hands of the Oakland Cemetery Company at the date of its sale or other disposition of the property. The Oakland Cemetery Company had power to convey its unsold and undedicated interest in the land to Tenison and to Sumpter in payment of judgments held by them, and the property could be lawfully sold under executions issued upon such judgments, subject, in the hands of the purchasers thereunder, to all trusts, dedications, rights, and equities previously imposed thereon by the Oakland Cemetery Company. Rev. Stats., arts 5065, 714-717, 1491, sec. 2, 639; Constitution, art. 8, sec. 2, art. 11, sec. 9; Threadgill v. Pumphrey, 87 Texas, 573; Hopkins v. Grimshaw, 165 U. S., 342; 87 Mich., 540; 53 Conn., 553; Mills, Eminent Domain, sec. 19; Matter of Deansville Cemetery Assn., 66 N. Y., 569; Farneman v. Mt. Pleasant County Assn., 135 Ind., 344; Palmer v. C. H. Cem., 122 N. Y., 429; Matter of Board of Street Opening, 133 N. Y., 329.

Notwithstanding its having dedicated the entire cemetery tract, as a public burying ground forever, to those who should purchase from it lots for that purpose, the Oakland Cemetery Company still retained an interest in the unsold lots subject to execution.

The Oakland Cemetery Company was not, subsequent to the deed of dedication, simply a trustee for the purchasers of lots and did not have the right as long as the land was used as a burying ground to the possession of the same. After the sale of its entire interest in the land it was not a trustee for any purpose and had no right to the possession of the land; but such trusts to whatever extent they existed, devolved upon the purchasers of the land.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Fifth Supreme Judicial District has certified to this court the following statement and question:

"The Oakland Cemetery Company was duly chartered by the State of Texas on June 6, 1891. Said charter provides that said corporation was formed for the maintenance of a public cemetery and shall exist for fifty years unless sooner dissolved. After the organization of such corporation, under its charter, it purchased the land in controversy, which said land on the 8th day of December, 1892, was dedicated by said Oakland Cemetery Company to the public by a written deed of dedication

executed by virtue of and pursuant to resolutions of the board of directors of said company duly passed. Said deed of dedication is as follows:

" 'Know all men by these presents, that whereas, the Oakland Cemetery Company, of Dallas, Texas, a private corporation created under and by virtue of the laws of the State of Texas, and having its principal office of business in the city of Dallas, in said State, has, by purchase, secured for a cemetery the tract of land hereinafter described, and whereas, it is desirous of permanently devoting said cemetery to burial purposes and of placing the care and keep of the grounds, graves, etc., on a firm and lasting basis in order that those who shall purchase lots therein may do so with full assurance that the graves will never, throughout the future, be disturbed, and will for all time to come be taken care of, regardless of the time, place or circumstances of such purchasers.

" 'Now, therefore, the said Oakland Cemetery Company, of Dallas, Texas, does hereby dedicate as a cemetery for burial purposes forever the said lands described as follows, to wit: [Field notes which embrace the land in controversy omitted].

" 'Provided, however, and it is hereby expressly understood, that the use and benefit of said grounds shall be limited exclusively to the purchasers respectively of lots therein, and that 25 per cent of the sum received in the sale of each lot, in all time to come, shall be and is hereby set apart and made a perpetual fund to be loaned upon the best securities, by three trustees, one to be selected by the company and two by the lot owners, and the interest received therefrom devoted to the care and keep of the grounds, graves, etc., in said cemetery, under the rules and regulations of said company.

" 'In testimony whereof, the said company has this day caused its president to subscribe its name and its secretary to attest the same with its seal, this 8th day of December, 1892.

" 'C. B. GILLESPIE, Secretary.        " 'J. P. MURPHY, President.'

"Said deed was duly acknowledged and recorded on December 8, 1892.

"Said land was duly laid off into lots and platted and recorded in the record book of the office of the clerk of the County Court of Dallas County. There was no certificate of acknowledgment to the map, and it was recorded by pasting a lithograph copy of the map on page one of the record book No. 176. Said book was a large record book for deeds, and was made expressly to record conveyances of lots in said cemetery. The blanks in the deeds are printed and bound in the book, and deeds are recorded therein by simply filling up the blanks. Each deed described lot conveyed by its number and designated on the map, and refers to the map as the map of the Oakland Cemetery recorded on page one of said record book. Said cemetery company issued pamphlets descriptive of said cemetery and contains the deed of dedication, the resolution by which it was executed, and a general description of the ceme-

tery and the rules for its government.   About $30,000 was expended by said company in laying out and embellishing the grounds.   And that prior to the sales under executions hereinafter mentioned, a great many lots had been sold in the cemetery for the purpose of sepulture, and a great many bodies buried there and a large number of monuments and tombstones erected.   The cemetery was a public cemetery and burying ground. It is located contiguous to the city of Dallas, and a fine gravel street opens to it.   As an inducement to purchase lots therein, a great number of the pamphlets above referred to were distributed and a great number of the purchasers of lots were given copies of the pamphlet. The cemetery was used as a burying ground and was open to the public at the time of the sales under executions hereinafter mentioned.

"The object of said company was to make a profit by the sale of lots for sepulture in said cemetery.   Several executions were issued by virtue of certain money judgments recovered against the said Oakland Cemetery Company and levied on thirty acres of said land, a part of said cemetery tract.   And on May 1, 1894, said thirty acres was sold under said executions.   The same was bid in by E. O. Tenison and Guy Sumpter, who, on December 10, 1894, conveyed the same to the defendant, the Peoples Cemetery Association, which association was formed, as stated in its charter, for the purpose of owning, conducting, and maintaining a cemetery adjacent to the city of Dallas and selling lots therein for burial purposes.

"Said association ousted the Oakland Cemetery Company from the possession of said land, and said association was in possession at the institution and trial of this suit.

"Question:   Did the sale of the land in controversy under the executions convey title to the purchasers at the sale?   In other words, was the land, at the time of the levy of said executions and sale thereunder, subject to levy and sale under execution?"

The sale of the cemetery property under executions issued upon judgments rendered against the Oakland Cemetery corporation conveyed no title to Tenison and Sumpter.

The validity of this sale depends upon the proper construction of our statute concerning the creation of and prescribing the powers and duties of cemetery corporations.   Article 642, subdivision 5, Revised Statutes, authorizes the creation of a corporation "for the maintenance of a public or private cemetery or crematory."   The rights, powers, and duties of such a corporation, when created, are prescribed by the following articles of the Revised Statutes:

"Article 715.   Cemetery corporations shall have power to divide the land of the cemetery into lots and subdivisions for the purposes of the cemetery, and to tax the property for the purpose of its general improvement.

"Article 716.   Such corporation shall have power to convey, by deed or otherwise, any lot or lots of the cemetery for purposes of sepulture. When such lots shall have been surveyed and platted, the survey and

plat shall be recorded in the office of the clerk of the county court of the county wherein the same are situated, and shall not afterward be changed or altered. No lots shall be sold or disposed of until such plat shall have been recorded.

"Article 717. All owners of lots purchased of any such corporation shall become members thereof, and be entitled to vote in the election of its officers and upon any other matters to the same extent as stockholders in other corporations."

When the Oakland Cemetery corporation laid out its lands into lots and subdivisions and caused a plat of the land to be made and recorded in the office of the county clerk of Dallas County, the land so laid out was irrevocably dedicated to use as a place of burial for the dead just as effectually as if the statute had stated that it should be so dedicated. The use prescribed is public in its nature and of a character that necessarily excludes any concurrent use of the same property. Consequently, the use is exclusively for purposes of sepulture.

After the dedication of the land, the legal title remained in the corporation only for the purpose of conveying the lots to those who desired to use them for the purpose of burying the dead. No power is given by the statute to such corporations to convey the property for any other purpose, and the fact that the lots and subdivisions are made unchangeable and that the power to convey is restricted to the conveyance of "any lot or lots * * * for purposes of sepulture" operates as a limitation upon the power of the corporation to convey the land to "a lot or lots" and for the uses named. Upon dedication, the dominion of the corporation over the land as owner in fee simple was surrendered and the corporation became in effect a trustee to sell and convey the lots for the purposes specified and to carry out the purposes enumerated in the statute, with the right to appropriate the proceeds of the sale to itself in payment of the land.

Each lot-owner became a member of the corporation in the sense that he was entitled to participate in all elections for officers to manage the corporate business, and each was interested not only in the particular lot conveyed to him, but in the entire ground of the cemetery to be kept as an entirety and to be perpetuated and cared for by a corporate body. The rights of lot-owners in such a cemetery are so well expressed in the case of Close v. Glenwood Cemetery, 107 U. S., 466, that we copy from that opinion as follows: "It was held out to the lot-holders, not only that the ground immediately available for burial should remain set apart for that object, but that the cemetery should be forever under the protection of a perpetual corporation, charged with the duty of laying out and ornamenting the grounds, capable of receiving gifts and bequests, and empowered to make by-laws for the regulation of the affairs of the corporation; and the whole property was described as dedicated to the purposes of the cemetery, not necessarily that the whole should be laid out in lots, but that it should all belong to the institution and be available for its general objects. This was not to be a mere

graveyard in which each lot-holder acquired a piece of ground in which to bury his dead, and at the same time become chargeable with the sole care of his particular lot; but the lot-holders themselves became subject to by-laws and regulations having reference to the institution as an entirety, and the perpetual preservation of the cemetery as an ornamental and convenient place for interment and for resort by the relatives of the dead."

Every point made in the opinion quoted from is embraced in and fully covered by the provisions of our statute. Each lot-owner has in view that the cemetery ground as a whole shall be improved and ornamented so as to make it a pleasant place of resort for the friends and relatives of the deceased persons who may be buried there, as well as a place for interment of the dead. The Oakland Cemetery corporation was created for the purpose of carrying out the provisions of the statute and of perpetuating and preserving this ground as a place of burial, and to protect and preserve the rights of the various lot owners therein

The power to create debts on the faith of property dedicated to such a use, in which the lot-owners have such special interest, is wholly inconsistent with the limitations which the statute places upon the power of the corporation, and with the use to which the land is set apart, and would be destructive of the rights acquired by the lot-owners in making their purchases in such grounds. Wolford v. Crystal Lake Cemetery, 56 N. W. Rep., 56. Under our statute, a cemetery corporation has no power to create debts on the faith of the lands dedicated to burial purposes, and the sheriff had no power, under the executions, to sell the lands in question. Such sale would inevitably destroy every right growing out of corporate management of the cemetery, which are in fact the most sacred of all the rights of owners of lots in a cemetery.

The fact that another corporation has been formed and has undertaken to carry out the purposes of the dedication does not affect the legal question, for if Tenison and Sumpter had the right to buy the property and afterwards to convey it to a corporation, they might have held it in their individual right, thus depriving the lot-owners of the valuable benefits of corporate management and improvement of the cemetery grounds and of their right of participation in the management and control of such grounds.