*EX PARTE* McCALL, *IN RE* LITTLE v. PRESBYTERIAN
CHURCH OF FLORENCE.

INJUNCTION—CEMETERY.—A CHURCH which has *permitted* its members
and others to bury their dead on its lot for twenty years, has thereby
dedicated such part of its lot to that purpose, but in a proper case
it will not be enjoined from selling the lot and removing the bodies
to another place.

Intervention of H. C. McCall and S. T. Burch by petition

in proceeding in this Court by Valcour Little against Presbyterian Church of Florence, to enjoin the church from removing the body of a deceased member of his family from the cemetery on the church lot.

*Mr. George Galletly* and *S. W. G. Shipp,* for petitioners.

*Messrs. Willcox & Willcox* and *J. P. Neil,* contra.

April 19, 1904.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The Presbyterian Church of Florence wishes to sell its church lot, with a view of building its house of worship on a more suitable site.   The lot attached to the church was used as a cemetery from about 1861 to 1885.   To test the right of the church to sell the property, including the ground used as a cemetery, Valcour Little instituted this friendly proceeding to enjoin the church from removing the remains of his daughter buried in the cemetery.   Subsequently, H. C. McCall and S. T. Burch intervened in earnest hostility to the sale of the land used as a cemetery, and to the removal of the bodies of their relatives therefrom.

The referee appointed by this Court has taken much testimony relating to the history of the church and cemetery, and their connection with each other, and also as to the reason of the congregation for desiring to sell the property and rebuild elsewhere.

We do not think it necessary to go into any extended examination of the title of the church.   James McCown had title to the land for the life of Mrs. Ross.   From his whole course of conduct in turning over the property to the church, and from the terms of the deed of the remainderman, W. H. Ross, to the church, it was manifest that the property was intended to belong to the Presbyterian Church of Florence.   As an incident of this dedication and use by the church, it was, no doubt, contemplated that some of the land

should be used as a cemetery, in accordance with the almost universal custom of the time.

The privilege of interment was not confined to members of the church or their families, but the church officers exercised some general oversight and control, to the extent of excluding such interments as were objectionable. Subject to ordinary church uses and to this supervision and control, we think the church dedicated the land as a place for the burial of the dead, and in pursuance of this dedication it was so used for over twenty years. It is important to observe that no lots were sold and no consideration paid for the burial privilege allowed.

The testimony makes it perfectly clear that the location has now become entirely unsuitable for a place of worship on account of the proximity of railroad tracks, over which trains frequently pass during the church service. Without the aid expected from the sale of this property the congregation would not, at least for a considerable time, be able to build another church.

In 1886 interments in this cemetery were forbidden by the municipal authorities, and none have taken place since that time.

The church proposes, before surrendering possession of the property to the purchaser, to remove all bodies buried there and reinter them in a decent and orderly manner in the new cemetery now in general use in the community; and also to remove and re-erect the monuments and gravestones, all at its own expense, unless persons interested prefer to take such action on their own behalf.

The question is, whether under these circumstances the church should be enjoined from selling the property and removing the bodies in the manner proposed.

When a cemetery association or church sells particular lots in a cemetery, the purchaser becomes the owner of the soil, and manifestly his right to its possession protects interments made by him from disturbance. *In re Brick Presbyterian Church,* 3 Ed. Ch., 155.

It is also true, as a general proposition, that where ground has been dedicated to the public for use as a cemetery, the owner cannot afterward resume possession, or remove the bodies interred therein, although he has received no consideration for its use, and the interments were made merely by his consent. *Beatty et al.* v. *Kurtz et al.,* 2 Peters, 566, 7 L. ed., 521; *Wolford* v. *Cemetery Association,* 56 N. W., 56 (Minn.); *Hook* v. *Joyce,* 22 S. W., 651 (Ky.); *Colbert* v. *Shepherd,* 16 S. E., 246 (Va.). This doctrine is somewhat anomalous, and is not to be extended beyond the principle upon which it is founded. That principle is that the most refined and sacred sentiments of humanity cluster around the graves of departed loved ones, and that when these sentiments have become associated and connected with a particular spot of ground, by the invitation or consent of the owner, he shall not for any secular purpose disturb them.

There is no right of property in a dead body, in the ordinary sense in which the word "property" is used, but the law recognizes a family right which descends from generation to generation to protect the bodies of deceased relatives from indignity and the ground in which they are interred from unnecessary invasion or disturbance. 6 Cyc., 720.

It does not follow, however, that there are no circumstances which will warrant a church in changing the location of its house of worship and removing the bodies interred on its ground. The very delicate question to be decided in each case is, whether, having all the circumstances in view, the proposed removal should be regarded an·undue intrusion on the tender sensibilities of those interested. In the consideration it should be remembered that in this comparatively new country the dead have often been buried in very unsuitable places, and that removals have often taken place in the exercise of the most tender sentiment, in view of the future forgetfulness and disregard of the old neighborhood graveyards as the country is changed and developed. If such removals by private individuals tend to promote, rather than destroy, reverence for the dead, the Court should

certainly hesitate to prevent such action by a church, when it seems to the Court that such removal would have a like result.

The evidence is clear that this cemetery is much neglected, and its condition is not such as to stimulate any of the finer sentiments of respect due to the dead. If the church is removed, it is extremely probable that it will be still more neglected. Nearly all those who are concerned have indicated their purpose to remove their dead to the new cemetery, and some have already done so. The few remaining graves will be left in the very midst of the most active business life. When those who now care for them as sacred shall pass away and the relationship of future generations to these dead becomes more remote, there is little room to doubt that they will be almost, if not entirely, forgotten, and the land used for other purposes. So far, therefore, from the proposition of the church to sell the property and remove the dead to the city cemetery indicating any disregard of the sacredness of the association, we think, if carried out, it will promote in the highest degree the very high purpose which those who object wish to conserve. This conviction is much strengthened by the fact that most of those who have their dead interred here prefer to have their bodies removed. It is no light thing to disturb the resting place of the dead, but we think in these exceptional circumstances it is proper and right to do so.

It can hardly be contended that the interests of the church, in view of the peculiar facts, should be absolutely sacrificed to the wishes of a few of those whose dead have been buried in its land by its permission. The preservation of the solemnity and dignity so essential to public worship makes the removal absolutely necessary. It has been made to appear that this object probably cannot be accomplished without the sale of this property. The church proposes to remove and reinter the dead with respect and decency in a much more suitable place. While we entertain the highest respect and great sympathy for the sentiments of those who object to

the removal of their dead, the Court cannot, in the exercise of its discretion, stop the development of the church, when we do not think its contemplated action should be regarded as offending the most delicate sensibilities. This conclusion is well supported by authority. 1 Washburn on Real Property, 35; *Windt* v. *Church,* 4 Sandf., ch. 471; *Land Co.* v. *Jenkins,* 56 Am. St. Rep., 31 (Ala.); *Price* v. *Church,* 4 Ohio, 515.

While we have no doubt of the right of the church to sell property dedicated to its use, we do not discuss that question, because it does not appear the petitioners who make it are members of the church and have an interest in its decision.

For the reasons herein stated, the petition for injunction is denied.