**PETERSON v. STOLZ.　(No. 1172.) ***

(Court of Civil Appeals of Texas.　Beaumont. Feb. 9, 1925.　Rehearing Denied Feb. 18, 1925.)

**1. Cemeteries ⬩15—Exemptions ⬩51—Burial lots cannot be sold or mortgaged after interments; burial lots held exempt.**

Burial lots, public or private, cannot be sold nor mortgaged by owner, and are exempt from forced sale, and not subject to lien, after interments therein.

**2. Mechanics' liens ⬩13—Cemetery lots not subject to mechanics' liens for monument; "buildings."**

Const. art. 16, § 37, giving mechanics, etc., liens on buildings and articles made or repaired by them, does not include cemetery lots held for purposes of sepulture or any monument or building thereon.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Building.]

**3. Mechanics' liens ⬩13—Grounds devoted to public uses not subject to lien.**

Buildings and grounds devoted to public purposes and uses exclusively, on grounds of public necessity and policy, are not subject to mechanics' or materialmen's liens, unless expressly made so by statute.

**4. Mechanics' liens ⬩13—"Cemetery" is "public place" not subject to mechanics' liens; "graveyard"; "burial ground."**

"Cemetery" is synonymous with graveyard, burial ground, and place of burial, and includes not only lots for depositing bodies of dead, but avenues, walks and grounds necessary for its use or ornamental purposes, and public cemetery is public place not subject to mechanics' or materialmen's liens.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Burial Place; First and Second Series, Cemetery; Graveyard; Public Place.]

**5. Exemptions** ⬅89—**Owner of burial lot cannot waive statutory exemption by agreement that permanent monument shall remain builder's property until paid for.**

While owner of exempt property, other than homestead, may ordinarily incumber it by contract, owner of burial lot cannot waive statutory exemption from forced sale, and execution by agreement that monument intended and erected as permanent structure, not removable without injury to soil and disturbing dead body, shall remain property of builder until fully paid for.

**6. Cemeteries** ⬅15 — **Chattel mortgage, on monument part of cemetery lot, void.**

Intentional construction of monument on cemetery lot so as to become part of realty, which was not subject to lien for security of debt because of nature of dedication and use, rendered chattel mortgage thereon void.

**7. Cemeteries** ⬅18—**Builder of monument on cemetery lot should demand other security than lien.**

One contracting to build monument on cemetery lot with knowledge of purposes to which latter was devoted, nature of monument, and its permanency and attachment to soil, should demand other security for debt than retention of lien thereon.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Action by L. W. Stolz against Mrs. Mattie Peterson. Judgment for plaintiff, and defendant appeals. Affirmed in part, and reversed and rendered in part.

C. A. Lord, of Beaumont, for appellant.

C. E. Pool and Howth, Adams & Hart, all of Beaumont, for appellee.

O'QUINN, J. Appellee, as plaintiff below, brought this suit in the district court of Jefferson county, Tex., to recover a balance due him on the purchase price of a certain monument or mausoleum constructed by appellee on appellant's burial lot situated in the Port Arthur cemetery at Port Arthur, Tex., under the following written contract:

#### Contract.

$7200.00 and monument on lot. 10% Earnest money due on
Agent's No. ———. April 1st, 1920.
Date, 3/15 1920.
County of Jefferson, Cos. No. ———.
State of Texas. Received ———.
Bldg. Complete Apr. 22, 1921.
Shipped Cd. 720.00.

This is to certify that I have this day bought of L. W. Stolz Marble & Granite Works of Beaumont, Texas, hereinafter known as The Company, one monument as per size and material given below.

Design No. Vault #421.    Dimensions:
Epitaph No. ———.    As per blue prints.
Material, Florence exterior.
Color, Light Cloud Interior.    All bronz doors, B-54.
Ship to ———.
Shipping point, L. W. Stolz Marble & Gr Works.
County to erect.    Peterson Res'd letters
State ———.    over Door.

#### Inscription.

(The words born and died, being superfluous, will be left off, unless otherwise ordered. Only one inscription free, unless order is for a double monument, in which event write the names and dates below in the same order they are to be placed on the monument.)

Name ———.    Name ———.
Inscription on Monument:
Date of Birth ———.    Date of Birth ———.
Date of Birth ———.    Date of Birth ———.

The Company agrees to deliver said monument on cars at their plant on or before 90 days from receipt of contract, or within a reasonable length of time thereafter, for which I (we) promise to pay The Company or order the sum of Seventy-Two Hundred and no/100 Dollars, less railroad freight charges, at their office in Beaumont, Texas. Any unavoidable delay in delivery of said monument shall not invalidate this contract, and furthermore all agreements are mentioned in this contract, and no verbal agreements with the agent will be recognized by The Company. It is also agreed that this order is absolute and cannot be countermanded, and that the monument is to remain the property of the Company until paid for in full, and I (we) agree to pay interest at the legal rate on deferred payments, together with 10 per cent. attorney fees if collected through an attorney.

Witness: J. H. Bernhardt.
[Signed] Mrs. Chas. Peterson.
Sold by L. W. Stolz. J. H. B.

It is understood that the agent taking this order will see that the monument is properly erected at the grave of the deceased upon arrival, without additional charge, personally superintending the erection, or making satisfactory arrangements with another party to erect same.

This instrument was filed for record as a chattel mortgage, and duly recorded in the chattel mortgage records of Jefferson county, Tex., July 21, 1922.

In his petition plaintiff alleged that he had fully complied with his contract, had erected the monument or mausoleum in question, and that same had been accepted by appellant; that appellant had paid him the sum of $4,704.78, leaving a balance due him of $2,495.22, together with interest thereon at the rate of 6 per cent. from May 5, 1921, the date appellant accepted said monument or mausoleum, and 10 per cent. attorney's fees thereon.

Plaintiff also alleged that he had a valid and subsisting contractor's and mechanic's lien upon said monument or mausoleum and the lot upon which it was situated, under article 16, § 37, of the Constitution of the state of Texas, as security for the payment of the balance due him under said contract for the labor and material furnished by him for the erection of said monument or mausoleum, and prayed for judgment against the defendant for his debt, interest, attorneys' fees, and for foreclosure of his asserted constitutional mechanic's and materialman's lien on the monument or mausoleum and the lot, for the satisfaction of his debt.

Defendant answered by general demurrer, general denial, and specially:

(1) That if plaintiff had ever had any such lien as was asserted, that same was barred by the two and three years statutes of limitation; and

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(2) "That the lot of land described in plaintiff's said petition is a lot in a cemetery, where the body of her deceased husband has been interred, and where the defendant intends that her sepulcher shall be made at her death, and where she intends to be buried; and that the said lot is exempt from all liens and from all forced sales under the statutes of this state; and she alleges that the monument in question and referred to in plaintiff's petition has become a part of said burial lot, and that the purported lien asserted by the plaintiff is not subject to foreclosure, and that the said lot nor the said monument can be made subject to the indebtedness asserted by the plaintiff. And in this connection the defendant alleges that the said monument has been deeply imbedded in the said lot of land, and cannot be removed therefrom without great injury both to the land and to the said monument, and that it was at all times the intention of the parties that the said monument should become a part of said land and belong thereto, and not be subject to removal therefrom."

To this answer of the defendant, plaintiff replied by supplemental petition, by general demurrer, general denial, and specially that the defendant had, in the contract above set out, given to plaintiff a chattel mortgage or lien upon the monument or mausoleum before the material in said monument was placed upon the burial lot, by reason of which the defendant was estopped to deny that plaintiff had a lien upon the said monument and upon the lot where same was situated, and again asserted his lien upon the monument and the lot, and prayed for foreclosure of same.

The case was tried before the court without a jury, and judgment rendered for plaintiff for the amount of his debt, interest, and attorneys' fees, and decreed that plaintiff had a valid and subsisting lien on the lot in question, together with the monument thereon, for the security of his debt, for which judgment was rendered, and judgment rendered foreclosing the said lien, except as for the attorneys' fees, against the said lot and monument thereon, from which judgment the defendant has appealed.

The record reflects that Mrs. Peterson, appellant, is the widow of Capt. Chas. Peterson, and that she lived in Port Arthur, Tex. Appellee is engaged in the marble and granite business, and the sole owner of what is known as the L. W. Stolz Marble & Granite Works, situated at Beaumont, Tex., and dealing in tombstones and monuments, and erecting monuments and mausoleums. Capt. Chas. Peterson, husband of appellant, was dead, and had been buried in lot 12, row E, in the public cemetry at Port Arthur, Tex. Mrs Peterson desired to erect a suitable monument or mausoleum on her said burial lot, and to deposit therein the remains of her dead husband, and for that purpose entered into the contract above set out with appellee. The appellee exhibited to appellant a book containing cuts or designs of tombstones,

monuments, and mausoleums sent out by the Vermont Marble Company, and she selected the design of the one erected on the burial lot under the contract aforesaid. Appellant ordered from the Vermont Marble Company the material, consisting of many pieces already cut and prepared to be set up and made into the monument, and when same was received promptly erected the monument, and same was accepted by Mrs. Peterson.

Appellant brings the case before us, urging four propositions, presenting the questions:

(1) That under the evidence appellee was not an artisan, mechanic, or materialman, and, therefore, did not make or repair any building and could not have a constitutional lien for labor done or material furnished.

(2) The monument or mausoleum in question was not a "building" within the contemplation of 'article 16, § 37, of the Constitution, and hence no lien could arise by virtue of the Constitution.

(3) That appellant and appellee, in making the contract for the monument or mausoleum in question, never contemplated that any constitutional lien should attach to the burial lot, because in the contract for the monument or mausoleum they created a chattel mortgage on same to secure the payment of the contract price.

(4) That neither the lot of land in the cemetery used by the appellant for the purposes of sepulture, nor the monument or mausoleum thereon, is subject to any constitutional mechanic's or materialman's lien under the Constitution and laws of the state of Texas, because such lot is exempt from every character of forced sale in this state, and cannot be the subject of a lien after having been dedicated to burial purposes.

We shall discuss these propositions in their inverse order.

[1] We think appellant's fourth assignment should be sustained. By the great weight of authority, when land has been definitely appropriated to burial purposes, it cannot be conveyed as other property so as to interfere with the use and purposes to which it has been devoted. Burial lots, whether public or private, are not the subject of trade and commerce, and, after interments have been made in a burial lot by the owner, he can neither sell nor mortgage same. Oakland Cemetery Co. v. People's Cemetery Association, 93 Tex. 569, 57 S. W. 27, 55 L. R. A. 503; Wolford v. Crystal Lake Cemetery, 54 Minn. 440, 56 N. W. 56; Schroder v. Wanzor, 36 Hun (N. Y.) 423; Thompson v. Hickey, 8 Abb. N. C. (N. Y.) 159; Id., 59 How. Pr. 434; Hines v. State, 126 Tenn. 1, 149 S. W. 1058, 42 L. R. A. (N. S.) 1138; Anderson v. Acheson, 132 Iowa, 748, 110 N. W. 339–340, 9 L. R. A. (N. S.) 217; 11 C. J. 61. Lands once legally devoted to and used for burial purposes become appropriated to a public purpose in such a sense that the pow-

er of the body in which the legal title may rest to use or alienate the same, while such dedication remains in force, is restricted. It has accordingly been held that a cemetery corporation has no power to create debts on the faith of the lands dedicated for cemetery use, or to sell or mortgage same. Oakland Cemetery Co. v. People's Cemetery Association, 93 Tex. 569, 57 S. W. 27, 55 L. R. A. 503; Wolford v. Crystal Lake Cemetery, 54 Minn. 440, 56 N. W. 56. The same rule applies to individuals owning lots held for sepulture. The peculiar use to which property is dedicated and the sentiment of sanctity with which mankind regards the burial place of the dead, furnish ample reason for declining to apply to it the ordinary rules of ownership.

The universal sentiment of mankind throughout the ages has been that the ashes of the dead should not be disturbed, and that the soil in which the dead are buried is forever sacred, and should not be exposed to the vicissitudes of business affairs. This has been and is the public policy of the land. Lots held for the purposes of sepulture are the especial objects of favor in our own laws. Our statutes provide that cemetery lots, with their appurtenances, shall be forever exempt from taxes, executions, attachments, and forced sales. Article 767, Revised Civil Statutes. That there shall be reserved to every family, exempt from attachment or execution and every other species of forced sale for the payment of debts, any lot or lots in a cemetery held for the purposes of sepulture. Article 3785, subd. 3. That there shall be reserved to persons who are not constituents of a family, exempt from attachment, execution, and every other species of forced sale, a lot or lots in a cemetery held for the purpose of sepulture. Article 3788. Drainage companies, though invested with the broadest power to condemn for right of way purposes lands, both public and private, cannot take lands used for cemetery purposes. Article 2590. Oil and gas pipe line companies may not condemn for right of way. Article 1306. Interurban railway companies may not condemn for right of way. Article 6733. Water improvement districts may not condemn for right of way. Vernon's Sayles' Ann. Civ. St. 1914, art. 5107–78. They are free from all taxes. Article 767, 7507, subd. 2. Concert companies are not required to pay the statutory occupation tax when the entertainment is for the benefit of cemeteries. Article 7355, subd. 19. Not only do the laws of our state protect and hold free from every species of forced sale the lot or lots held by the living for the reception of their bodies when dead, but also protect the resting place of the dead from desecration. Article 510, Penal Code.

We think the legislation of our state evidences its recognition and full indorsement of the rule of public policy pertaining to burial lots. The Legislature, in providing that such lots should be free from taxation, not subject to the power of eminent domain granted to certain companies and corporations, and that they should not be sold for debt under execution, substantially declares against the policy of permitting them to be the objects of trade and commerce.

[2] But appellee insists that he has a mechanic's and materialman's lien on the monument and lot, given him by the Constitution, and that the right, being one given by the Constitution, cannot be affected or impaired by an act of the Legislature exempting real estate from forced sale and execution, when the Constitution does not exempt such real estate from the burden of the lien or from forced sale and execution.

The proper disposition of this case depends upon the proper construction of section 37, art. 16, of our state Constitution, the one invoked by appellee. It provides:

"Mechanics, artisans, and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy * * * enforcement of said liens."

Appellant contends that a monument built upon a lot in a cemetery used for the purposes of sepulture or over a grave cannot be a "building," within the contemplation of this provision of the Constitution, while appellee as earnestly insists that it is. In interpreting the word "building," in relation to mechanics' liens, it has been held that a "building" includes only those structures which have capacity to contain and are designed for the habitation of a man or animals or the shelter of property. Railway Co. v. Vanderpool, 11 Wis. 119, 78 Am. Dec. 691. Whether this be the correct definition or not, we do not believe that the framers of the Constitution intended the section under consideration to include lots in a cemetery held for the purposes of sepulture, or to cover any kind of monument or building erected thereon. We think it should be held that the framers of the Constitution were familiar with the rule of public necessity and public policy existing relative to such lots and buildings, and that they did not contemplate the clause invoked by appellee to operate in opposition thereto.

[3] Furthermore, the rule is well settled that buildings and grounds used and devoted to public purposes and public uses exclusively, upon grounds of public necessity and public policy, are not within the operation of and subject to a mechanic's or materialman's lien, unless expressly made subject to such lien by the statute creating the remedy. Atascosa County v. Angus, 83 Tex. 202, 18 S. W. 563, 29 Am. St. Rep. 637; City

of Dallas v. Loonie, 83 Tex. 291, 18 S. W. 726; Hutchinson v. Krueger, 34 Okl. 23, 124 P. 591, 41 L. R. A. (N. S.) 315, Ann. Cas. 1914C, 98; Bank v. Hazels, 63 Neb. 844, 89 N. W. 378, 56 L. R. A. 765; Barrett Mfg. Co. v. Board of Commissioners, 133 La. 1022, 63 So. 505, 50 L. R. A. (N. S.) 469; Hovey v. Town of East Providence, 17 R. I: 80, 20 A. 205, 9 L. R. A. 156; Phillips v. Rector, etc., 97 Va. 472, 34 S. E. 66, 47 L. R. A. 284; Leonard v. City of Brooklyn, 71 N. Y. 498, 27 Am. Rep. 80; Bank v. Malheur County, 30 Or. 420, 45 P. 781, 35 L. R. A. 141. .This rule is announced by all the American text-writers, and numerous decisions from all the jurisdictions could be cited in its support.

[4] "A cemetery is a place where the dead bodies of human beings are buried, a place or area of ground set apart for the burial of the dead. The term is synonymous with graveyard, burial ground, and place of burial, and includes not only lots for depositing the bodies of the dead, but also such avenues, walks, and grounds as may be necessary for its use, or for ornamental purposes. The law contemplates two classes of graveyards, public and private. The former class is used by the general community or neighborhood or church, while the latter is used only by a family or small portion of a community. *A public cemetery is as much a public place as a courthouse or a market.*" (Italics ours.) 11 C. J. 50.

In Atascosa County v. Angus, supra, the only question before the court was whether a mechanic had a mechanic's lien on the courthouse and lot (public square) upon which it was situated. The trial court had given plaintiff a judgment for the amount of his debt and for labor performed in erecting the courthouse, and decreed a foreclosure of a mechanic's lien on the courthouse and public square, with an order of sale to satisfy his judgment. The Supreme Court, in disposing of the question, said:

"The statutes of this state that create liens upon buildings and grounds in favor of builders and mechanics, and that provide the method of enforcing and establishing such liens, do not in express terms grant liens against a courthouse and public square, or other public building used for public purposes. For reasons of public policy and the public necessity, courts in construing statutes that create liens against buildings generally do not include within the operation of the statute buildings and grounds used and devoted to public purposes and uses, and that are constructed for such purpose. The weight of authority numerically, and also for the better reason, assert the rule, that builders' and mechanics' liens can only be created against public buildings and grounds when the right is expressly conferred by the statute; that the grant of lien against 'all buildings' will not be held to include public buildings and grounds, unless they are by the express terms of the statute included within its operation. * * * "The Legislature, in carrying into effect the constitutional provisions on the subject of mechanics' liens, has not named this class of pub-

lic property as affected by such liens, and in providing the method by which those liens are fixed has failed, in the laws that regulate such procedure, to recognize any right to fix liens against such public property as in controversy here."

The court then proceeded to reverse and dismiss the suit as against Atascosa county.

Lots in a cemetery dedicated and held for sepulture are devoted fully and exclusively to a public purpose. The Legislature, in carrying into effect the constitutional provision on the subject of mechanics' and materialmen's liens, has not named lots of land in a cemetery as affected by such liens, and in providing for the method by which those liens are fixed has failed, in the laws that regulate such procedure, to recognize any right to fix liens against such property, hence they are not subject to the lien claimed.

[5] But appellee insists that as a lien was retained in the contract on the monument to secure the payment of the balance due for the labor and material furnished, in erecting the monument, that it was the intention of appellant to waive the statutory exemption of the burial lot from forced sale and execution, and that as there is nothing in the Constitution or statutes which forbids or prevents the owner of exempt property, other than the homestead, from incumbering it by contract, therefore the exemption given by the statute was waived, and the contract is enforceable.

The contract contained this provision:

"It is also agreed that the monument is to remain the property of the company until paid for in full. * * * "

It is true that ordinarily the owner of property exempt by statute, other than the homestead, may by contract incumber the property; but here the same rule of public policy applies as it does to the lien on the lot. This is not a case where the tombstone or monument is simply set upon a base on the top of the ground at the grave, and can be detached without interfering with the soil or disturbing the body. The monument is so constructed as to unquestionably become a part of the soil. Appellee, Stolz, testified:

"I placed a marble building on Mrs. Peterson's burial lot. Its dimensions were as follows: 8 feet wide, 12 feet 6½ inches long, and 11 feet and 1 inch in height. It has a cement foundation, and it goes into the ground to a depth of approximately 4 feet. The building is constructed of three separate compartments in the interior, containing a vestibule. The entrance is gained through two bronz doors in the front of the building, and these compartments have removable ends whereby they can be opened so that you can see inside the vault— that is, by removing the ends you could see any section of the vault. The doors are grilled doors, and you can see the vestibule of it when it is locked.. The tomb or the building is con-

structed of three separate pieces of marble, having two thousand slabs and the key stones. The roof is a gabled roof with the gables closed in front and rear of the building. * * *

"Preparatory to putting up this tomb, we dug in the ground approximately four feet for the foundation. The foundation was nine feet wide by thirteen feet and six inches; that is, the complete foundation covered the entire lot; that is, the entire space for the tomb. We dug down in the ground and laid a foundation; that is, made a cement block in the ground, covering the entire excavation made. We completed the foundation, which is approximately four feet deep, and it came to the top of the ground. And then on top of that we set the tomb. The tomb was cemented onto the foundation. We completed the foundation to the top of the ground, and then put cement on top of the foundation, and then put the tomb on top of that and cemented it to the foundation.

"As to what would be the effect on the marble or bronz, or whatever material that monument is made of, if it were removed from its foundation, and as to how it could be removed, well, you wouldn't have anything but a bunch of small pieces, due to the fact that the damage would be so great, that is to say, this tomb could not be removed away from there without tearing it up and breaking up the structure or the monument itself, so that it would be a loss and entirely and absolutely destroyed. * * *

"We exhumed the body of Captain Peterson from this lot; that was the only body in the lot; and we placed it in one of the crypts in this mausoleum, and locked the doors and turned the key over to the sexton of the cemetery at that time. He was the one to take the key to the mausoleum. Any mausoleum when completed by a company, the key is turned over to the sexton of the cemetery as a rule in order that he may care for that mausoleum as though it was a lot."

It thus appears that the monument was so erected as to be, and was intended by the parties to be, a permanent structure, and that it cannot be removed without injury to the soil and disturbing the dead body. The body would have to be removed from its intended permanent resting place, and what would become of it is not made to appear. It was shown that appellant had no other burial lot in the cemetery, and thus the dead body would be dislodged from its resting place, and, in so far as is shown, would continue to remain disinterred. This the law will not countenance, as such would be against good morals and opposed to public policy. In Bank v. Hazels, supra, a suit wherein a judgment creditor sought to subject lots in a cemetery to a debt, the trial court held the property exempt from execution. The Supreme Court upheld the judgment of the trial court, and in its opinion said:

"It is not the policy of the law, nor the intention of the Legislature exempting real estate from execution, that the spirit of discord shall be permitted to invade the silent precincts of the dead, and there hold high carnival in an unseemly contest as to which of contesting litigants shall profit by the sale of the necessary part of Mother Earth to enfold in its peaceful embrace the last that is mortal of man."

There is nothing to show that, in giving the chattel lien on the monument found in the contract, Mrs. Peterson thereby intended to and did waive the exemption accorded the lot by the law; but it occurs to us that the retention of the chattel mortgage on the monument evidenced the fact that no lien on the lot was contemplated by either party, but that appellee relied upon his chattel mortgage on the monument for security for the payment of his debt.

[6] But be that as it may, the monument was intentionally so constructed as to unquestionably become a part of the real estate, and lost its character as a chattel and became a part of the soil, which, under the law, because of the nature of its dedication and use, was not subject to any lien for the security of a debt, and thus the chattel mortgage was rendered void and of no force.

[7] Moreover, as the assertion of a lien upon the home of the dead is not countenanced by law, we think that the law contemplated, and that it should be held, that appellee at the time of the making of his contract with appellant, and when he retained his lien therein, knowing the purposes to which the lot was devoted, and the nature of the monument and its permanency and attachment to the soil, should, if he so desired, have demanded and received from appellant other and lawful security for his debt.

What we have said disposes of appellant's second proposition, and renders the other questions presented by appellant immaterial, and they will not be discussed.

For the reasons given, the judgment against Mrs. Peterson for the debt, interest, and attorneys' fees is affirmed, and the judgment foreclosing the lien on the lot and monument is reversed and here rendered for appellant.

Affirmed in part, and reversed and rendered in part.