AMANDA ANDERSON, Appellee, v. SUE ACHESON AND JOHN ACHESON, Appellants.

**Cemeteries:** TITLE OF LOT OWNERS: EJECTMENT. The conveyance of 1 a cemetery lot by a city to be used only for burial purposes and subject to the laws and ordinances of the city, to be indivisible,

and not to be conveyed by the grantee out of his family after interment, unless to the city, does not create such an interest in the lot as will support an action for ejectment by a member of the family against third parties to whom the original grantee has transferred the title.

**Ejectment:** DAMAGES FOR TRESPASS. In an action of Right the plaintiff may recover damages for the trespass, when asked, although the proof will not sustain a judgment of ejectment.

**Burial of the dead:** REMOVAL: RIGHT OF ACTION. Where one is permitted to bury his dead in a public cemetery, even though by license, he acquires such a possession of the ground in which the bodies are buried as will entitle him to maintain an action against the owner of the fee, or a stranger, who without right disturbs it.

**Interest of cemetery lot owner.** The grantee of a cemetery ·lot is more than a mere licensee and his interest is not terminated by death, but continues as long as the ground is used for cemetery purposes.

**Same:** TENANTS IN COMMON: DESCENT. The grantees in a conveyance of a cemetery lot do not take title as joint tenants but as tenants in common, and upon the death of one his right to use the ground as a burial place does not pass to the survivor but to his heirs.

**Defect of parties:** DEMURRER: WAIVER. A defect of parties, in an action of Right by one tenant in common to recover possession of a cemetery lot, which appears upon the face of the petition must be taken advantage of by demurrer or the defect will be waived.

**Amendments:** LIMITATION: DAMAGES. An amendment, merely specifying more particularly the damages flowing from an injury alleged in the petition, may be filed after the time an original action therefor would be barred.

**Ejectment:** DAMAGES: DEFENSES. The fact that one tenant in common of a cemetery lot consents to the removal of bodies therefrom is not a defense to an action by the others for the wrongful act, and for a recovery of the lot.

**Same.** One who has committed a wrong in removing the dead from the original place of burial, cannot urge as a defense to an action to recover possession of the burial lot and damages for the wrongful removal of the bodies, that they have been again interred and should not be disturbed.

SHERWIN, J., dissenting.

*Appeal from Lee District Court.*— HON. H. BANK, JR., Judge.

FRIDAY, JANUARY 18, 1907.

ACTION in ejectment and for damages. Judgment as prayed, from which defendants appeal.— *Affirmed.*

*J. H. Anderson* and *W. J. Roberts,* for appellants.

*William Timberman* and *F. M. Ballinger,* for appellee.

LADD, J.—.The city of Keokuk acquired a tract of land, and platted it for cemetery purposes. It provided by ordinance for the sale and conveyance of the lots for places of burial, " subject to such conditions and regulations and at such prices as the city council shall prescribe by ordinance or otherwise," and enacted that: " Every lot shall be used by the proprietor only for the purposes aforesaid, shall be indivisible, and shall not be conveyed by the owner out of his family after an interment has been made thereon, unless to the city, or unless the bodies have been previously removed therefrom, and shall be forever exempt from taxes by the city." Also, that " proprietors shall not allow interment to be made in their lots for remuneration, nor shall any disinterment be made without written permission by the mayor." Sophia Whaley died in July, 1885, and her husband, Joshua Whaley, with other members of the family, selected lot 82, in block N, in the cemetery, and procured the conveyance of said lot to said Joshua and his son, Mike Whaley, on the 28th of that month. The conveyance recited that " The city of Keokuk hereby sells and conveys to " [grantees' names "] the lot described, and recited that it was " to be used only as a place of burial, and under and subject to the laws and ordinances of the said city of Keokuk, and to be indivisible, and not to be conveyed by the grantee out of his family after an interment has been made therein,

unless to the said city, and this conveyance shall be forfeited upon failure to comply with, or. the violation of, the provisions and laws and ordinances of the city in relation to the cemetery." Sophia Whaley was buried in said lot, and during the following year Joshua Whaley died, and was interred at the side of his wife. Joshua Whaley left surviving him three children, Mike Whaley, Sarah Coulson, and the plaintiff, Amanda Anderson. Prior to 1898 the defendants had acquired the lot adjoining the one mentioned, and Sue Acheson negotiated with Mike Whaley for the purchase of that in which his parents were buried. The agreed consideration was $18, the price of another lot, the cost of improving said lot and transferring the bodies of his parents, $25, and $30 for the lot in controversy. These amounts were paid to the clerk of the city council of Keokuk, $25 being given to the sexton for the removal of the bodies, and $30 being paid to Mike Whaley. Permits were secured from the cemetery committee of the city council to remove the bodies; the cemetery being under the control of such committee by virtue of an ordinance. The lot was conveyed by Mike Whaley to Sue Acheson by virtue of a permit " from the city to transfer " the same to her. Mrs. Acheson consulted plaintiff with respect to the purchase of the lot. She declined to consider the removal of the bodies of her parents, and did not ascertain until some time afterwards that the lot had been transferred to Mrs. Acheson and the bodies removed. In February, 1903, this action was instituted, praying that defendants be ejected from the lot, and for damages for replacing the bodies of the deceased, together with the headstone which had been erected to the memory of Sophia Whaley. After the evidence had been introduced, the district court directed a verdict in plaintiff's favor, with instructions to allow the reasonable costs of restoring the bodies and the monument to the lot from which they had been taken.

I. Appellants contend that plaintiff has no such in-

terest in or title to the lot as will sustain an action in eject-
ment or of right, as it is generally called in this State.

1. CEMETERIES:
title of lot
owners:
ejectment.
Strictly speaking, there is no right of property
in a dead body.   After burial it becomes a
part of the ground to which it is transmitted;
" earth to earth, ashes to ashes, dust to dust."   So, too,
are the coffin, shroud, and other habiliments irrevocably con-
signed to the earth, as mere adjuncts to the body, which
they serve to enfold while it is resolved into dust from
whence it springs.   With the coffined clay that they sur-
round, " they have said to corruption, thou art my father,
and to the worm, thou art my sister and my mother."   They
are no longer property, and their relations with the living
are at an end.   *Guthrie v. Weaver,* 1 Mo. App. 136.   But
in recognition of the universal sentiment of mankind, the
right to decent burial is well guarded by the law, and rela-
tives of the deceased may insist upon legal protection to the
burial place from unnecessary disturbance or wanton viola-
tion.   *Larson v. Chase,* 47 Minn. 307, (50 N. W. 238, 14
L. R. A. 85, 28 Am. St. Rep. 370) ; *Meagher v. Driscoll,*
99 Mass. 281 (96 Am. Dec. 759) ; *Thirkfield v. Mountain
View Cemetery Ass'n,* 12 Utah, 76 (41 Pac. 564) ; *Pulsifer
v. Douglass,* 94 Me. 556 (48 Atl. 118, 53 L. R. A. 238) ;
note to *Winkoop v. Winkoop,* (Pa.) (82 Am. Dec. 513).
A body once buried could not be removed in Rome except
by permission of the Pontifical College, and, in the prov-
inces, of the Governor.   By the canon law, which prevailed
in such matters over a large portion of Europe, a body once
buried could not be removed without license from the or-
dinary.   *Pierce v. Proprietors of Swan Point Cemetery,* 10
R. I. 227 (14 Am. Rep. 667).   Because of the control of
such matters by the ecclesiastical courts, the common law in
its earlier period did not cover matters with relation to the
burial of the dead fully, and the rules with reference thereto
have been the result of gradual development, until all courts
now concur in holding that the right of possession of a dead

body for the purposes of burial belongs to those most intimately and closely connected with deceased by domestic ties, and this is a right which the law will recognize and protect.

The authorities are equally conclusive that the last resting place of the dead, when in actual or constructive possession of a relative, will be protected from desecration at his instance. The courts quite generally hold, however, that the purchaser of a lot in a public cemetery, though the deed be absolute in form, does not take any title thereto. The mere privilege or license to make interments in the lot so purchased, exclusive of all others, is all that is acquired thereunder. *Kincaid's Appeal,* 66 Pa. 411 (5 Am. Rep. 377); *Stewart v. Garrett,* 119 Ga. 386 (46 S. E. 427, 64 L. R. A. 99); *Partridge v. First Independent Church,* 39 Md. 631; *Humphrey v. Front St. M. E. Church,* 109 N. C. 132 (13 S. E. 793); *Page v. Symonds,* 63 N. H. 17 (56 Am. Rep. 481); 6 Cyc. 717; *Jacobus v. Congregation,* 107 Ga. 518 (33 S. E. 853, 73 Am. St. Rep. 141); *Bessemer Land & Imp. Co. v. Jenkins,* 111 Ala. 135 (18 South. 565, 56 Am. St. Rep. 26); note to *Louisville v. Nevin,* 19 Am. Rep. 80; note to *Craig v. First Presbyterian Church,* 32 Am. Rep. 426; *Meagher v. Driscoll,* 99 Mass. 281 (96 Am. Dec. 759). Thus it was said in *Dwenger v. Geary,* 113 Ind. 106 (14 N. E. 903):

The place where the dead are deposited all civilized nations and many barbarous ones regard in some measure, at least, as consecrated ground. In the old Saxon tongue the burial ground of the dead was " God's Acre." One who buys the privilege of burying his dead kinsmen or friends in the cemetery acquires no general right of property; he acquires only the right to bury the dead, for he may not use the ground for any other purpose than such as connected with the right of sepulture. Beyond this his title does not extend. He does not acquire, in strict sense, an ownership of the ground. All that he does acquire is the right to use the ground as a burial place.

In *Page v. Symonds,* 63 N. H. 17 (56 Am. Rep. 481), it was said that " such right of burial is not an absolute right of property, but a privilege or license to be enjoyed so long as the place continues to be used as burial ground, subject to municipal control, and legally revocable whenever the public necessity requires it. It is a right of limited use for the purpose of interment, which gives no title to the land." In *Gow m v. Bessey,* 94 Me. 114 (46 Atl. 792), the court declared that " the holder of a lot in a cemetery belonging to a municipality or religious society for burial purposes, whether his evidence of title be by deed or certificate or other means, does not acquire an absolute title to the land, but has the right or license, exclusive of any and every other person, to bury the dead upon the subdivided plot assigned to him, and a license once acquired cannot be revoked so long as the ground continues to be used as a place of sepulture." As said in *Kincaid's Appeal,* 66 Pa. 411 (5 Am. Rep. 377), " the lot owner purchases a license, nothing more, irrevocable as long as the place continue a burying ground, but giving no title to the soil." This doctrine was recognized in *Hook v. Joyce,* 94 Ky. 450 (22 S. W. 651, 21 L. R. A. 96). But there title was said to have been acquired by prescription. In *New York Bay Cemetery Co. v. Buckmaster,* 49 N. J. Law, 449 (9 Atl. 591), the court held that an action in ejectment might be maintained by a lot owner, even though the deed recited that it was for the purposes of sepulture only. But an examination of the act of the Legislature conferring the charter discloses that the tract of land was to be held for certain specified uses, and provided that " the sublots shall be conveyed to the respective purchasers thereof when paid for in full in fee by deed, under the corporate seal of the said corporation." See Acts of 74th Legislature of New Jersey, approved March 5, 1850 (Laws 1850, page 195), where it is expressly provided that title shall pass, so in that case there was no room for construction. In *Buffalo City Cemetry Ass'n. v. City of Buf-*

*falo,* 46 N. Y. 503, the statute, without expressly providing that the company shall retain the fee and the lot owner merely acquire a license, in effect so did by enacting that " after filing such plat the trustees may sell and convey lots or plats designated on such map, upon such terms as shall be agreed, and subject to such conditions and restrictions to be inserted in or annexed to the conveyances as the trustees shall prescribe," and that " all lots or plats of ground designated on the maps filed as aforesaid, and numbered as separate lots by the incorporation, shall be indivisible, but may be held and owned in undivided shares; " provided for exemption from taxes, and also that, after being transferred to individual holders, and an interment in a lot so transferred, " such lot or plat from the time of such first interment shall be forever thereafter inalienable, and shall upon the death of the holder or proprietor thereof descend to the heirs at law of such holder or proprietor, and to their heirs at law forever; " provided, further, that the heirs might release one to another, and that the body of no one save such as have an interest in the lot, or relative or wife of such person or relation, be buried therein except by consent of all persons having an interest in the lot.   In deciding that the grounds were assessable to the company for the construction of a sidewalk, the court held that the effect of a conveyance of a lot was " no more than to confer on the holder of a lot a right to use for the purpose of interments. No such estate is granted as makes him an owner in such sense as to exclude the general proprietorship of the association. The association remains the owner in general, and holds that relation to the public and to the government. While subject to this, the individual has the right, exclusive of any other person, to bury upon the subdivided plat assigned to him.   He holds a position analogous to that of a pewholder in a house of worship.   It is a right exclusive of any other of the congregation, but subject to the right of the religious corporation, which represents the ownership of the property

to the pubic, and is the legal owner of the fee of the property."

It will be observed that the statute of New York contains the conditions incorporated in the ordinances of the city of Keokuk, and which are found in the deed to Mike and Joshua Whaley. For this reason the decision quoted is precisely in point. Nor are we inclined to think it was the purpose of the Legislature in enacting the statutes relating to public cemeteries that title should pass to those acquiring burial privileges. Section 697 of the Code confers on cities and incorporated towns the power to regulate and provide a place for the burial of the dead, and " to exercise over all cemeteries within their limits, and those without their limits established by their authority, the powers conferred on township trustees with reference to cemeteries." Turning to the statutes relating to township trustees, we find that section 583 provides for the platting of the ground for cemetery purposes, and section 584 that " all conveyances of subdivisions or lots of a cemetery thus platted shall be by deed from the proper owner." The plat is to be recorded with the county recorder, but the deed of a subdivision or lot with the township clerk. Section 587: " The trustees, board of directors, or other officers having the custody and control of any cemetery in this State, shall have power, subject to the by-laws and regulations of said cemetery, to inclose, improve and adorn the grounds of such cemetery; to construct avenues in the same; to erect proper buildings for the use of said cemetery; to prescribe rules for the improving or adorning the lots therein, or for the erection of monuments or other memorials of the dead upon such lots; and to prohibit any use, division, improvement or adornment of a lot which they may deem improper."

These are the powers over the several lots reserved under the statute by the city of Keokuk, and manifestly they are inconsistent with the acquirement of a fee under a conveyance of a lot or subdivision. The control, save merely

and even this, under the section first quoted, is subject to regulation.    The privilege or license to make interments in the lot purchased, exclusive of others, passes under the deed, but not title in or to the soil.

The plaintiff was never in the actual possession of the lot, and under our statute can only maintain the action upon proof of a valid subsisting interest in real property. Section 4183, Code.    A mere privilege or license is but an incorporeal hereditament, of which the sheriff cannot deliver possession, not an interest in the soil, and will not support such an action.    *Richardson v. Louisville, etc., R. Co.,* 169 U. S. 128 (18 Sup. Ct. 268, 42 L. Ed. 687).    But where the license is coupled with an interest, as where a miner, under a license to dig, search for, and take metals or minerals within a certain locality, shall open and work and be in actual possession of any mines, may, if ousted, maintain ejectment with respect to them.    *Beatty v. Gregory,* 17 Iowa, 109.    In *Hancock v. McAvoy,* 151 Pa. 460 (25 Atl. 47, 31 Am. St. Rep. 774, 18 L. R. A. 781), the court held that the right of sepulture was not an interest in the land such as will support an action in ejectment, in the course of the opinion saying: "As was said in *Black v. Hepbourne,* 2 Yeates (Pa.) 331, 'ejectment will only lie for things whereof possession may be delivered by the sheriff.' If a recovery in ejectment, founded on a mere right or license, such as that acquired by the grantee in the deed above referred to, were permitted, how could the sheriff, under a writ of *habere facias,* put the plaintiff in possession without interfering with the rights, powers, and duties of the cemetery association."    In *Stewart v. Garrett,* 119 Ga. 386 (46 S. E. 427, 100 Am. St. Rep. 179, 64 L. R. A. 99), a like conclusion was reached; the court observing that the action seemed inappropriate " to the ascertainment of any right in a burial lot.    If any fiction is pardonable in a case of this kind, it would be fitter to hold that the fee in these sacred precincts belongs to the dead.    Within these hallowed

of the bare right of burial, is retained by the municipality, precincts no court would desire to send the sheriff with a writ of possession. The instinct of humanity is loyalty to a statute impressed upon all hearts." In *Pierce v. Proprietors of Swan Point Cemetery*, 10 R. I. 227 (14 Am. Rep. 667), the court, conceding that ejectment would not lie in such a case, considered the propriety of equitable relief at great length, and concluded that equity only can give a full and complete remedy, and that the jurisdiction is fully adequate to it. That suit was against the cemetery association, and the ruling was put on the ground that it was charged with a sacred trust for the benefit of all who may, from considerations of family or friendship, have an interest in the lots. See Pulsifer v. Douglass, *supra*. We are of opinion that the interest of plaintiff in the lot was not such as is requisite to support an action in ejectment.

II. But no writ of ejectment was ordered in the judgment entered or subsequently issued, though prayed for in the petition. Judgment for damages alone was rendered, and these were such as might be allowed in an action for trespass *quare clausum*. Chapter 2 of title 21 of the Code, relating to the recovery of real property, has greatly modified procedure as it formerly existed in actions of ejectment, and especially in applying thereto the principles of Code pleading and proof. Particular allegations appropriate to such an action are required and any joinder or counterclaim save as therein provided is prohibited; but in other respects the rules of pleading as found in chapter 8 of title 17 of the Code, unless inconsistent therewith, are applicable to actions of right. Damages for withholding possession or using or injuring the premises may be demanded in the petition of ejectment, and the answer may set up claim for permanent improvements. Sections 4187, 4199, Code. In the trial, as in every other, no more need be proven than is sufficient to entitle either party to recover. This appears

2. EJECTMENT: damages for trespass.

from section 3639 of the Code, providing that: "A party shall not be compelled to prove more than is necessary to entitle him to the relief asked for, or any lower degree included therein, nor more than sufficient to sustain his defense."

III. The petition alleged damages, and if these were proven, and plaintiff may recover, the case was rightly decided. The rights of one to the burial place of his dead, in the absence of fee to the soil or right to the exclusive possession thereof, in respect to the maintenance of a civil action for its disturbance, is one of delicate, but not very satisfactory, solution. Because of the respect entertained for the final resting place of the dead, and so little temptation to disturb their repose, disturbances of the same have rarely become the subject of litigation. The adjudications have been sufficient, however, to establish the principle that where one is permitted to bury his dead in a public cemetery, even though this be by license or privilege, he acquires such a possession of the spot of ground in which the bodies are buried as will entitle him to maintain an action against the owners of the fee or strangers, who without right so to do disturb it. *Bessemer Land & Imp. Co. v. Jenkins,* 11 Ala. 135 (56 Am. St. Rep. 26, 18 South. 565); *Jacobus v. Congregation of the Children of Israel,* 107 Ga. 518 (33 S. E. 853, 73 Am. St. Rep. 141); *Hollman v. City of Platteville,* 101 Wis. 94 (76 N. W. 1119, 70 Am. St. Rep. 899); *Thirkfield v. Mountain View Cemetery Ass'n,* 12 Utah, 76 (41 Pac. 564); *Partridge v. First Independent Church,* 39 Md. 631. In Jacobus v. Congregation, *supra,* it was held that where the purchaser of a lot continues in possession of such until his death, possession is transmitted to his heirs, and this rule was recognized in *Gardner v. Swan Point Cemetery,* 20 R. I. 646 (40 Atl. 871, 78 Am. St. Rep. 897). The nature of the interest in and the use to which a burial lot is put is such that this should be declared the rule.

3. BURIAL OF THE DEAD: removal; right of action.

Appellant insists, however, that as Joshua and Mike were licensees, the death of Joshua revoked all interest in the burial lot. It may be conceded that a naked license 4. INTEREST OF CEMETERY LOT OWNER. is revoked by the death of the licensee (18 Am. & Eng. Ency. of Law, 1141); though this is not so as to the survivor, where the license runs to two persons *(Chandler v. Spear,* 22 Vt. 388). The ground is acquired for the purposes of the sepulture, not only of the purchaser, but of his family as well, and after these have been laid at rest the sentiment of their descendants may be relied upon to guard the last resting place of their dead as hallowed ground. The license or privilege continues so long as the land is used as a cemetery. A cemetery has been declared not to be the subject of partition. *Brown v. Lutheran Church,* 23 Pa. 495. After referring to a schism in the church, the former worshippers which now sleep in the grounds, the court said: " The only form in which the partition asked for could be made would be by a public sale, and what would these graves, of intestimable value to surviving relatives, fetch in market? They would prove a prejudice to the property, and would depreciate its price. And then, in the hands of a purchaser, they would be almost sure of desecration. Pennsylvania, with a refined and elevated sense of what is due to both the dead and the living, has forbidden by statute the opening of streets, lanes, alleys, or public roads through burial ground or cemetery, and has provided a penalty for willful injuries done to graveyards, not only to the tombstones, the fence railings, but even to the " shrub and plants " which bereaved love cultivates in such places. The sentiment is sound, and has the sanction of mankind in all ages, which regards the resting place of the dead as hallowed ground, not subject to the laws of ordinary property, nor liable to be devoted to common uses. We do but express the concurrence in this sentiment which we feel when we hold that a church and burial ground situated as these now under consideration, and owned by dis-

tinct religious societies as tenants in common, are not within
the spirit and meaning of our statutes of partition, and that
the court was right in denying judgment *quod partitio fiat*
to the plaintiffs."

Nor can a cemetery after dedication for burial purposes
and in use therefor be mortgaged. *Brendle v. Reformed
Congregation,* 33 Pa. 415; *Wolford v. Crystal Lake Cem.
Ass'n,* 54 Minn. 440 (56 N. W. 56). In the former case
it was said that: "We hold that the ground once given
for the interment of a body is appropriated forever to that
body. It is not only the *domus ultima,* but the *domus
æterna,* so far as the eternal can be applied to man or ter-
restrial things. Nothing but the most pressing public ne-
cessity should ever cause the rest of the dead to be disturbed."
Nor can it be sold under execution. *Oakland Cemetery
Ass'n v. People's Cemetery Ass'n,* 93 Tex. 569 (57 S. W.
27, 55 L. R. A. 503). And in several States it is held
exempt from assessment without express statutory authority.
*Mount Auburn Cemetery v. Cambridge,* 150 Mass. 12 (22
N. E. 66, 4 L. R. A. 836); *Louisville v. Nevin,* 10 Bush
(Ky.) 549 (19 Am. Rep. 78). See Notes to *San Diego v.
Linda Vista W. Dist.,* 35 L. R. A. 36. In *Thompson v.
Hickey,* 8 Abb. N. C. (N. Y.) 159, it was held that a burial
lot could not be mortgaged, and in *Derby v. Derby,* 4 R. I.
414, that it was not included in a power of sale given an
executor to pay debts and legacies, but passed to the heir
of the testator. In *Sabin v. Harkness,* 4 N. H. 415 (17
Am. Dec. 437), it was said that those erecting a tombstone
may maintain an action for its injury, and after their death
the heirs of him in whose honor it was erected may prose-
cute such action. In *Pierce v. Swan Point Cemetery,* 10
R. I. 227 (14 Am. Rep. 667) the right of the heir thereto
was sustained as against the widow of deceased, who had
removed his body from the burial lot. In *Mitchell v.
Thorne,* 134 N. Y. 536 (32 N. E. 10, 30 Am. St. Rep.
699), an action by the heirs for an injury to the monument

of their ancestor was sustained. See *Davidson v. Reed*, 111 Ill. 168 (53 Am. Rep. 613). The peculiar use to which such property is dedicated, and the sentiment of sanctity with which mankind regard the burial place of the dead furnish ample reason for declining to apply to it the ordinary rules of ownership and devolution. The principle of all the cases, as said in Gardner v. Swan Point Cemetery, seems to be that the buried body shall remain undisturbed, and that the right and duty falls to the next of kin to see that its repose is duly protected. This, however, is not to be confused with the right to the custody and control of the body before burial, when other considerations than those of kinship are involved. *Hackett v. Hackett*, 18 R. I. 155 (26 Atl. 42, 19 L. R. A. 558, 49 Am. St. Rep. 762). See *Thompson v. Deeds*, 93 Iowa, 228.

IV. Nor do we think appellant's contention that Joshua and Mike Whaley acquired the lot as joint tenants, and that, therefore, upon Joshua's death his interest passed to Mike as survivor, is sound. Section 2923 provides that " conveyances to two or more in their own right create a tenancy in common, unless the contrary intent is expressed." As said, the interest of Joshua was something more than an ordinary license. The right to the use of the ground as a burial place passed to his heirs, and the conveyance to him and Mike Whaley was within the rule of this statute. See *Bolton v. Oberne*, 79 Iowa, 278. True, the ordinance of the city declared that the lot should be indivisible, but this, like other provisions, was enacted for the regulation and control of the lots, and not to define the nature of the interests which might be acquired therein.

5. SAME: tenants in common: descent.

V. It is urged, however, that one of the heirs of Joshua Whaley, the plaintiff, without the others, her sister, Sarah Coulson, and Mike Whaley, cannot maintain the action. Section 3463 of the Code requires that " persons having a united interest must be joined on the same side, either as plaintiffs or defendants, except

6. DEFECT OF PARTIES: demurrer: waiver.

as otherwise expressly provided, but when some who should be made plaintiffs refuse to join, they may be made defendants; the reason therefor being set forth in the petition." The three heirs of Joshua Whaley became tenants in common, and were each interested in the damages to the place of his burial, save that Mike Whaley had consented thereto. This may have furnished sufficient reason, without more, for making him a party defendant. But he was not made such. The petition does not allege that Sarah Coulson had been accorded an opportunity to join in the suit as party plaintiff, nor was she made a defendant. It is the universal rule that tenants in common, when jointly interested in the damages, must join in an action for trespass. *Lowery v. Rowland,* 104 Ala. 426 (16 South. 88); *Allen v. Woodward,* 22 N. H. 544; *Merrill v. Beekshire,* 11 Pick. (Mass.) 274; *Tucker v. Campbell,* 36 Me. 347; *May v. Slade,* 24 Tex. 209; *Watson v. Milwaukee, etc., R. Co.,* 57 Wis. 339 (15 N. W. 468; 11 P. & P. 777). But the question must be raised in the way pointed out by statute in order to be available. At the common law the nonjoinder of parties could not be taken advantage of save by a plea of abatement. *Branch v. Doane,* 17 Conn. 415; *Thompson v. Hoskins,* 11 Mass. 419; *Webber v. Merrill,* 34 N. H. 208; *Winters v. McGhee,* 3 Sneed (Tenn.) 128; *Lee v. Turner,* 71 Tex. 264 (9 S. W. 149). The defect of parties here appeared on the face of the petition, and this is made by statute a ground of demurrer. Section 3561, Code. Nonjoinder of parties is such defect, *(Mornan v. Carroll,* 35 Iowa, 22; *King v. King,* 40 Iowa, 120); and, the defect being apparent on the face of the petition, it could not be taken advantage of by answer, save, possibly, after a demurrer had been overruled, and the omission to demur waived the point *(McCormick v. Blossom,* 40 Iowa, 256; *Lillie v. Case,* 54 Iowa, 177; section 3564, Code; *Frum v. Keeney,* 109 Iowa, 393). The neglect to demur on the ground of nonjoinder of parties is to be given the same effect as the omission to raise that issue by

plea in abatement at common law, and, as the petition was otherwise sufficient, the plaintiff was entitled to recover.

VI. The bodies of plaintiff's parents were removed in November, 1898, and this action was begun in January, 1903. The petition alleged that defendants did, " in viola-

7. AMENDMENT: tion of the rights of this plaintiff, exhume, dig
limitation:
damages. up, and remove therefrom [the lot] the bodies of the father and mother of this plaintiff," and " had buried other bodies upon said lot, and are seeking to maintain said lot as a burial place for their own dead," and demanded damage. In January, 1904, more than five years after the cause of action had accrued, an amendment was filed, alleging that to return the bodies to the lot and restore the monument and shrubbery would cost $400, and asked that these items be included in the damage to be allowed. To this defendants pleaded the statute of limitations. The plea was not good, for no new cause of actions was set up. The amendment merely specified more particularly the damages flowing from the injuries alleged in the petition.

VII. The consent of Mike Whaley, in consideration of thirty pieces of silver, or their equivalent, to the desecration of his parents' graves by the removal of their bodies and the

8. EJECTMENT: tombstone erected to their memory therefrom,
damages:
defenses. can furnish no defense. Had the acts been such as he was entitled to do as a tenant in common, his consent that these might be done by another possibly would have been binding on the co-tenants; but what was done was in the nature of an ouster of possession and the commission of waste, for which he might have been held accountable to them. His consent furnished no defense.

VIII. Appellant insists that the bodies of the deceased, having been interred, ought not to be disturbed. This should have been given consideration by defendants be-

9. SAME. fore their unlawful interference with the burial place of plaintiff's parents against her protest. The authorities cited by them are in point. " To

disturb the mortal remains of those endeared to us in life sometimes becomes the sad duty of the living; but, except in cases of necessity or for laudable purposes, the sanctity of the grave should be maintained, and the preventive aid of the courts may be invoked for that object." *Choppin v. Dauphin,* 48 La. Ann. 1220 (20 South. 681, 33 L. R. A. 133, 55 Am. St. Rep. 313). " A proper appreciation of the duty we owe to the dead, and a due regard for the feelings of their friends who survive, and the promotion of the public health and welfare, all require that the bodies of the dead should not be exhumed, except under circumstances of extreme exigency." *Thompson v. Deeds,* 93 Iowa, 228. It does not lie in the mouth of one who has committed the wrong condemned, however, to interpose this as a defense against the proper assessment of damages, or any other legal atonement for the injury suffered.— *Affirmed.*

SHERWIN, J.— I agree with the opinion, except as to the statement therein that an action will not lie for the possession of a cemetery lot. The question is not in the case, however, and need not be discussed.