NORTHERN LIGHT LODGE, No. 156, I. O. O. F., Appellee, v. TOWN OF MONONA et al., Appellants.

MUNICIPAL CORPORATIONS: Public Improvements—Permanent
1  Sidewalks—Procedure. A permanent sidewalk, constructed under Section 779, Code Supplement, 1913, is not a *"public improvement"* within the meaning of Section 792 *et seq.* (Title V, Chap. 7), Code, 1897, governing the construction of paving, sewers, etc. It follows that such sidewalks may be constructed

and valid assessments for the cost thereof made without pursuing the procedure provided for the construction of paving, sewers, etc.

MUNICIPAL CORPORATIONS: Public Improvements—Assessments—What Constitutes Abutting Property. A tract of land "abuts" upon a street only where such property and street have a boundary line in common; and, where a tract of land has been lawfully platted into smaller lots for reasonable and proper purposes, only such lots as have one of their boundary lines in common with the line of the street can be said "to abut" on such street. So held as to a tract of land divided into cemetery lots, the occasion of the holding being an attempt to assess the entire tract for the cost of a permanent sidewalk. See Section 779, Code Supplement, 1913.

MUNICIPAL CORPORATIONS: Public Improvements—Assessments—"Abutting" and "In Front of" as Synonymous. Principle recognized that, in the assessment of property for public improvements, the terms "abutting" and "in front of" are synonymous.

CEMETERIES: Title of Lot Owner—Assessment for Sidewalks. It may not be said that, owing to the *nature* of cemetery lots, the sale thereof to divers persons does not break the integrity of the original tract out of which the lots have been carved, and that an assessment for the cost of a sidewalk may be levied against the tract *as a whole*, irrespective of such sales.

MUNICIPAL CORPORATIONS: Public Improvements—Assessments—Injunction to Restrain Collection. Injunction to restrain the collection of a special assessment for the cost of a public improvement will lie *when there is a total lack of jurisdiction to levy any assessment.*

MUNICIPAL CORPORATIONS: Public Improvements—Assessments—Assessments Against Cemeteries. Whether cemeteries are impliedly exempt from special assessments for public improvements, *quaere.*

*Appeal from Clayton District Court.*—A. N. HOBSON, Judge.

SATURDAY, JANUARY 20, 1917.

REHEARING DENIED TUESDAY, MAY 22, 1917.

THE opinion states the issues and the material facts.—
*Affirmed.*

*D. D. Murphy & Son,* for appellants.

*E. W. Cutting,* for appellee.

WEAVER, J.—The appellee brought this action in equity
to enjoin the collection of a special assessment levied to pay
the cost of constructing a sidewalk. Few, if any, of the
material facts are in dispute. The plaintiff is a local lodge
of an order commonly known as The Odd Fellows. Many
years before this controversy arose, the lodge became the
owner of about four acres of land. This land is within the
town limits, and, as we understand the record, it fronts on
Iowa Street, adjoining the principal town cemetery. Hav-
ing acquired the title, the lodge proceeded to plat the land
(except a small strip hereinafter mentioned) into blocks,
drives and alleys, for cemetery purposes. The space left
between the nearest range of burial lots and the street
line was 20 feet wide. Of this width, 16 feet was platted as
a cemetery street or drive, and the remaining 4 feet, to use
the language of the witnesses, was "thrown into Iowa
Street." By this we understand that the front fence of the
cemetery property was set 4 feet inside of the true line
of the property owned by the lodge, and that the strip out-
side of the fence became, for all practical purposes, a part
of the public street. The first sidewalk on this side of the
street was built by public subscription and laid along the
fence upon this strip. When the time came to renew or
replace the walk with the one involved in this litigation,
the city caused it to be placed along the line of Iowa Street'
as originally laid out, leaving vacant the 4-foot strip to
which we have referred. The premises were platted into
ranges of burial lots and blocks parallel with Iowa Street,
the ranges being separated by streets or drives 16 feet in

width. The plat as a whole consisted of 203 whole and 23 fractional lots, and these, with the intersecting drives and alleys, occupied the entire premises enclosed and used for burial purposes. It does not appear that the cemetery was provided for or dedicated to the exclusive use of the lodge or its members, but the lots were sold and conveyed to members of the public generally. At the time of the trial below, 140 full lots and 17 fractional lots had been sold, at prices ranging from $10 to $15 each. Conveyances were made to the purchasers by warranty deed, some without any qualification, while others contained the clause: "Always reserving all rights granted by law to cemetery associations," or "Subject to all rights granted by law to cemetery associations." When the assessment complained of was made, all the lots in the range of blocks nearest to Iowa Street had been sold and conveyed to individual purchasers, and the nearest lot still owned by the lodge was 126 feet distant from the line of that street. Not to exceed 14 of the unsold lots were within the limit of 300 feet of Iowa Street. It should also be said that, apparently without any express contract or understanding, the plaintiff has allowed the general management and control of the cemetery grounds to pass into the hands of a voluntary cemetery association, and it has so remained for a period of about 15 years.

With this explanation of the situation, we will now take up the history of the proceedings leading up to the special assessment, enforcement of which is sought to be enjoined.

In the year 1906, the town council of Monona enacted a general ordinance that, where the grade of a street "has been or shall hereafter be established and the bed thereof brought to grade, there shall be constructed * * * permanent sidewalks of cement of the width as defined by ordinance and within the time as fixed by resolution of the council ordering and directing the construction of the same."

By another section of the same ordinance, it was provided that, when the council shall determine that such walk shall be built, "they shall by resolution order the improvement to be made, stating therein the time in which the same shall be done, and cause a copy of the same to be served on the property owner affected," and that, upon failure of the owner to construct such walk, then the town shall cause the work to be done and "assess the cost thereof on the parcels of land in front of which the same is constructed." By a later ordinance, the width of all sidewalks in that section of town which includes the property in question, is fixed at 4 feet. On August 3, 1914, the council passed a resolution that a cement walk 4 feet wide be constructed on the south side of Iowa Street, and that the work be done within 30 days. It is conceded, subject to defendant's exception as to its materiality, that no other resolution of necessity was passed; that no notice was given or served of the time when such resolution was to be considered; that the contract to build the walk was not let on competitive bids; that the contractor was not required to give bonds; and that no notice was given fixing a time within which property owners might appear and make objection to special assessments for the expense of such construction. It does appear, however, that, after the resolution was passed, a copy thereof was served upon the lodge, which responded with a written refusal to build the walk, stating that the lodge had disposed of all the property abutting on Iowa Street. It also appears that, at the time the construction of this walk was ordered, there was an existing contract between the city and a third person by which the latter had undertaken to construct all cement walks ordered by the council at a stated price, which is shown to have been somewhat less than the current rate for such work, and the work now in question was done in pursuance of such contract. After the walk had been constructed, but before any assessment was made, the

lodge served written notice on the town council, objecting to the levy of any special assessment therefor upon the cemetery property owned by it. The grounds stated for such objection are numerous. We shall not attempt to state them all, but it may be said in a general way that they include the claim that their property does not abut on Iowa Street; that the portion of the cemetery so abutting has been sold and conveyed; and that the statutory requirements were not observed in ordering and constructing the work. Thereafter, the town council by resolution found the expense of constructing the walk in front of the cemetery to be $127.80, and ordered said sum to be assessed upon the entire cemetery property, describing it as a single parcel or tract of land. It is to enjoin the collection of this assessment and have the same adjudged and declared void that this action was brought.

The foregoing statement renders unnecessary any special reference to the pleadings. In so far as the issues are not made apparent from the recitation of facts here set forth, they will be made clear in discussing the legal propositions advanced by counsel. The trial court, having heard the evidence, found for the plaintiffs generally, and defendants appeal.

I. The briefs of counsel give much prominence to the question whether the assessment should be declared void because of the failure of the town council to observe the statutory conditions to the acquirement of jurisdiction to order the construction of the walk. As the trial court's decree is stated in general terms only, and is accompanied by no written opinion or special findings, it is not shown whether this objection by the plaintiff was thought to be good. It is the contention of appellee's counsel that the construction of a sidewalk is a "street improvement," within the meaning of Chapter

1. MUNICIPAL CORPORATIONS: public improvements: permanent sidewalks: procedure.

7, Title 5, of the Code and its amendments. With this as a premise, it is argued that, to acquire jurisdiction to order the construction of this sidewalk on Iowa Street, the town council should have first adopted a resolution of necessity, after due publication of notice, as provided in Section 810, Code Supplement, 1913, and Code Section 811; that a written contract should have been m~ ˚ and filed before the work was begun (Code Section 812); that the contract should have been let only upon sealed proposals and newspaper publication of notice (Code Section 813); that a contractor's bond should have been exacted (Code Sections 814, 815); that a plat of the property and a schedule of assessments should have been prepared and filed for public inspection (Code Section 821); and that ten days' notice by newspaper publication should have preceded the levy of assessments.

If this objection be held good, we would need go no further to affirm the judgment below, but, after considerable reflection, we think it cannot be sustained. It is doubtless true, generally speaking, that a sidewalk upon a public street is a "street improvement," and, if there were nothing in the statute indicating a different intention, we might well hold with the appellee that, in ordering the construction of such walks, the procedure prescribed in Chapter 7, Title V, of the Code must be pursued with substantial fidelity. It is manifest, however, that, in the very nature of the situation, there is practical need of distinction's being made and recognized between the formalities to be observed and safeguards to be thrown around transactions involving large public expenditure and placing heavy burdens upon the public treasury or upon private property, and those minor expenditures the need of which is arising daily, or minor improvements pertaining particularly to the convenience of restricted localities. A paving project or a system of sewerage contemplates, as a rule, large cost and

heavy burdens upon the property. They are improvements of a permanent character, rendering it quite impracticable to remove them if found unsatisfactory. Their proper construction calls for the exercise of more or less technical skill by the contractor who does the work and the engineer who plans and supervises it, matters upon which the average property owner or observer has little ability to pass critical judgment. It is, of course, quite essential to guard, so far as possible, against extravagance, incompetence, waste and graft, by keeping the exercise of the taxing or assessing power within well defined limits and maintaining intact effective safeguards of public interests. In our cities, and especially in our smaller cities and towns, the ordering and constructing of a sidewalk is often a matter affecting no more than a single lot or block, and it is but seldom that it is a matter of general interest. It is a work which the property owner himself may perform if he so desires, though in practice the municipality can do it cheaper and better than he can. He can give it his personal oversight and attention. It is, in nearly all cases, an improvement of comparatively little cost, and, in so far as it promotes public convenience, the sooner the work is done and the walk opened to travel, the better. Moreover, it is important to note that the expense of publishing the various notices and complying with the various formalities specified in the chapter on public improvements necessarily amounts to a very considerable aggregate, which, in the matter of paving and sewering, is distributed over many pieces of property, imposing but a slight expense on each, but, in the matter of a small sidewalk job, would materially increase the lot owner's assessment. Then, too, there seems to be no apparent reason why any ordinary sidewalk improvement may not be initiated and completed with all due protection to public and private interests, while the ponderous, slow-moving machinery of municipal legislation is dragging its way through

the initiatory steps to the letting of a contract for an improvement of the other class. Whether for these or other reasons, we cannot say, but it is nevertheless true, as we read the statute, that the legislature has in fact recognized this distinction. The authority of the city or town to provide for the building of sidewalks is specifically mentioned only in Chapter 6 of Title V of the Code, and it is not, in express terms, to be found anywhere in Chapter 7, upon which appellee relies. In Chapter 6, Section 777, Code Supplement, 1913, a town is authorized to provide for laying temporary plank walks, and to assess the cost, not to exceed 40 cents a lineal foot, on abutting property. By Section 779 in the same chapter, Code Supplement, 1913, authority is given to provide for the construction of permanent sidewalks on streets brought to grade, and to assess the cost on abutting property. By Code Sections 780 and 781 of the same chapter, authority is also given to repair, maintain and clean such walks. In Section 791-a, still in the same chapter, is a provision that all objections to the cost of construction must be made to the council before the day fixed for levying the assessment, and in the same connection are provisions enabling the property owner to pay such assessments in installments, if he so desires.

Passing, then, to Chapter 7, on which appellee relies, we find it entitled, "Of Street Improvements, Sewers and Special Assessments." The title does not get us very far, but the initial section, Code Supplement, Section 792, starts with the proposition that cities have the power to improve any street "by grading, parking, curbing, paving, graveling, macadamizing and guttering the same  *  *  *  and to assess the costs on abutting property." Then follows a provision, Code Section 794, giving power to provide for construction of sewers. Section 810, Code Supplement, 1913, requiring a preliminary resolution of necessity by the city council, is expressly limited to street improvements or sew-

ers "authorized in this chapter," and this recognition that this chapter has special application to a line of street improvements not elsewhere sufficiently provided for, is clearly visible throughout the provisions as an entirety. Add to this the fact, which we have already noted, that nowhere in Chapter 7 is there any mention of sidewalks, and that such subject can be brought within its scope only as we may say that the phrase "street improvements" is broad enough to include sidewalks, and the further fact that the subject of sidewalks is specifically included in Chapter 6, which provides in terms the authority for their construction and the procedure by which such authority may be exercised, and we think it becomes clear that the legislative machinery and the more or less intricate procedure specified in Chapter 7 were not intended to govern the exercise of municipal authority with reference to sidewalks.

The legislative recognition of this distinction is elsewhere very apparent. For example, Chapter 7 contains a provision by which the property owner may obtain the privilege of paying his special assessment in installments, and, if the appellee's theory be correct, it needed no additional legislation to give the same privilege to the man whose property was assessed for a sidewalk; yet it was found, or at least thought, necessary, in order to accomplish that purpose, to amend Chapter 6. See Code Supplement, 1913, Sections 791-b to 791-e, inclusive. Again, the distinct character of the two chapters is clearly shown in Section 779, Code Supplement, 1913, found in Chapter 6, where, after giving authority to construct permanent sidewalks and assess the cost thereof on abutting property, it adds:

"Towns shall have the power to make the street improvements *provided for in chapter seven of this title, and pay for the same, or any part thereof, out of the general fund, or to assess, levy and collect special taxes for the*

*cost, or any part thereof, against the abutting property,
in the manner provided in the said chapter."*

Is it not clear that the legislature believed that the procedure prescribed in Chapter 7 was not applicable to the construction of sidewalks, and that this special provision was necessary to make the manner of assessment there provided available for such an improvement?

It is said in argument that, in the case of *Clifton Land Co. v. City of Des Moines,* 144 Iowa 625, we held explicitly that the procedure provided for in Chapter 7 is to be followed in the construction of sidewalks; but this is a mistake. The matter of the distinction to be drawn between Chapters 6 and 7 of Title V of the Code was not there considered or passed upon. The plaintiff in that case had himself instituted the proceedings to build the walks. The city, whether by one chapter or the other of the Code, or by both chapters, had jurisdiction of the subject matter; plaintiff had invoked it, and the proceedings so instituted had resulted in the construction of the improvement; and we held him estopped to raise the objection that the city had no authority to order the improvement, and, in so far as he sought to raise objection to the manner in which the work was done, we further held that his remedy was by appeal and not by injunction.

It is enough to say, in conclusion upon this branch of the case, that, in our judgment, the appellee's position, that the preliminary steps which the statute makes necessary to the jurisdiction of the city council to proceed with a paving improvement or the construction of a sewer must be likewise observed to authorize the construction of a sidewalk, cannot be sustained. This conclusion does not in any manner negative the idea that, while the preliminaries to the exercise of the council's jurisdiction to order the construction of a pavement or sewer are not necessary to its jurisdiction to order a sidewalk, yet the provisions of Chap-

ter 7 as to the manner and method of making the assessment and levy may govern in both cases. That such will be the rule, at least under some circumstances, appears to be indicated by Section 792-c, Code Supplement, 1913, which provides:

"So far as applicable, Sections 821, 822, 823, 824, 829, and 839 * * * shall govern all special assessments made in cities and towns unless otherwise specially provided."

The same section seems also to preserve the right of appeal in all cases.

II. If the property in this case was li-

2. MUNICIPAL COR-able to the assessment, except for some ir-
PORATIONS: pub-
lic improve- regularity in the proceedings by which the
ments: assess-
ments: what con-improvement was authorized, or some defect
stitutes abutting
property. in the execution or quality of the work done, we should then be met by the proposition whether plaintiff had a remedy by appeal, and, if it had, then an action to enjoin would not lie. We are of the opinion, however, that the case hinges upon the more fundamental question whether the council had, or could under any circumstances have, acquired jurisdiction to levy this assessment. If this is to be answered in the negative, as we think it must, the judgment below must be affirmed. The statute which authorizes the building of the walk provides that the cost of permanent sidewalks may be assessed upon "the lots or parcels of land in front of which the same shall be constructed." Section 779, Code Supplement, 1913. The assessments provided in

3. MUNICIPAL COR-Chapter 7 of Title V, Section 792, Code Sup-
PORATIONS: pub-
lic improve- plement, 1913, are to be laid upon "abutting
ments: assess-
ments: "abut- property." The general ordinance No. 61
ting" and "in
front of" as of the city, relied upon by the defendant,
synonymous. provides that the cost thus incurred shall be laid on the property in front of which the walk is con-

structed, and the notice which the city served upon plaintiff of its order to build makes use of the same language. The inquiry then arises whether the property assessed is, within the meaning of the law, "abutting property," or property "in front of which" the walk is laid. We are of opinion that there is no essential difference in the legal effect of the two forms of expression. The question as to what is abutting property, within the terms of the statutes authorizing special assessments, is not a new one in this court. In *Millan v. City of Chariton*, 145 Iowa 648, 650, it is defined in general terms as being that property between which and the improvement there is no other land. In *Kneebs v. City of Sioux City*, 156 Iowa 607, we repeat that definition. Stating it in other words, we there said that the term applies to "properties lying contiguous to the street improved, whether specifically outlined upon a plat or not." Further noting the limits of its application, we quoted approvingly the following:

"If a platted lot has been divided in actual use into two distinct tracts, one of which is separated from the street by the other, the one in the rear is not regarded as abutting on the improvement." 1 Page & Jones' Taxation by Assessment, Sec. 620.

In an earlier case, *Smith v. City of Des Moines*, 106 Iowa 590, we held that a lot separated from the street by another platted lot or strip of land could not be assessed for a street improvement even though the several lots were both owned by the same person, and in practical use constituted part of the same dooryard or lawn. The opinion in that case was written by Robinson, J., who did not agree with that view, and his entire argument is opposed to that result, but closes with the brief but important statement that the majority of the court was against him, and that the judgment of the trial court, which he believed to be correct, was reversed. In the *Kneebs* case, a city lot had been

platted with a width of 52 feet and a length of 150 feet, and was bordered on one side by Riverside Avenue. A railway company appropriated as a part of its right of way a strip from 10 to 16 feet wide from the side of the lot next to the avenue. Plaintiff was the owner of the remainder of the lot. The city, having caused the avenue to be paved, sought to extend a special assessment therefor over the plaintiff's property, but we held that the appropriation of the right of way so separated or segregated the rest of the lot from the street that the property assessed did not abut thereon, and the assessment was annulled. According to the consensus of authorities, we think it must be held that a tract of land, large or small, abuts upon a street only where such property and street have a boundary in common, and that, where a tract of land has been lawfully platted into smaller lots or parcels for reasonable and proper purposes, only such lots and parcels as bound upon the street can be said to abut thereon. When the word is used with respect to street improvements, it does not necessarily mean that the property must actually be in contact with the work or structure by which the street is improved, but it does mean that the street improved and the property to be charged with the cost of the improvement shall touch or meet upon a common line.

Now, that plaintiff, as the owner of the 4-acre tract, had the right to dedicate it to use as a cemetery, no one will deny. To that end, it was entirely proper for it to plat the tract into blocks of burial lots, separated by convenient streets or driveways and alleys. And, when the land was thus platted and set apart for such use, we can conceive no good reason why, under the law to which we have already referred, the authority of the city or town, if any it has, to levy the cost of the sidewalk upon abutting property, is not limited to that part of the property, if any there be, which borders or abuts upon the street improved. This, we think,

would be the case had no lots yet been sold, and for still stronger reason it must apply where the lots have been conveyed to other persons to such an extent that the property left unsold has no contact whatever with the street.

In avoidance of this objection, the appellant argues with much earnestness that, notwithstanding the conveyance of a large majority of the lots to other persons, many of whom have doubtless used them for the burial of their dead, and perhaps have expended much labor and money in improving and decorating them, yet there is such an underlying title and proprietorship remaining in the plaintiff that the city may consider the entire cemetery as a single lot or parcel of land and treat the plaintiff as its owner, for the purpose of levying and collecting a special assessment, not upon the lots severally, but upon the cemetery as a whole. So far as this question of title is concerned, appellant places much reliance upon the decision of this court in *Anderson v. Acheson*, 132 Iowa 744. The cemetery there considered was one of a public character, provided, owned and platted by a city. A city ordinance provided that the burial lots should be used by the purchaser only, should remain indivisible, and, except it be to the city, should not be conveyed to anyone but a member of the purchaser's family. It also provided that proprietors of burial lots should not allow any interment upon such lots for a remuneration, nor make any disinterment without the permission of the mayor. A lot was purchased by the members of the family of one Whaley, the deed being made to the father and a son. The father and mother were afterward buried on the lot, and, later, the son undertook to sell the lot to Acheson and move the bodies of the parents to another part of the cemetery. To this, other members of the family objected, and suit was brought to enjoin any disturbance of the bodies of the dead, and this relief was granted by the trial

4. CEMETERIES: title of lot owner: assessment for sidewalks.

court and affirmed by this court. It will be seen at once that there is no likeness or analogy between the issues in that case and those in the case at bar, but counsel find in the arguments used or doctrines approved in the discussion of the cited case, statements and propositions which are thought to have a legitimate application here. Counsel fail, however, to notice that said case deals only with a *public* cemetery, in which the conveyance of a lot was made subject to so many conditions and restrictions as to vest the purchaser with little, if anything, more than a mere family privilege or right of burial; and the effect of our decision was that, when a burial was rightfully made on such lot, a court of equity would protect the grave from desecration, on the complaint of any member of the family of the deceased. Counsel quote the court as there saying:

"The courts quite generally hold that the purchaser of a lot in a cemetery, though the deed be absolute in form, does not take any title thereto. The mere privilege or license to make interments in the lot so purchased, exclusive of all others, is all that is acquired thereunder."

Such was not the language of the opinion. What we did say was expressly limited to a "public" cemetery, and, when thus read, shows that the distinction of which we speak was not overlooked. It would certainly be strange if the owner of land by perfect title, were he so disposed, could not plat it as a cemetery and give, sell or convey to a grantee a title as full, complete and absolute as his own. It is said, however, that the deeds given by plaintiff were not absolute. The evidence shows, as we have before stated, that some of the conveyances to lot purchasers were made by warranty deed without any qualification, while others made use of the expression, "Subject to all rights granted by law to cemetery associations." A search of the statute discloses no rights conferred upon cemetery associations which would have the effect to reduce the title conveyed to

the purchaser of a lot to anything less than a fee. By Code Section 587, the officers or directors having control or management of a cemetery may adopt rules governing its care, ornamentation and improvement, but on no fair interpretation can this be given the effect claimed for it by counsel. The restrictions upon the right of a lot owner go only to the manner of his use of the property, and not to the quality of his title. The deed gives more than a mere license or privilege—it conveys the property. Many deeds of land are made subject to building restrictions and other limitations upon the use of the property, but such stipulations do not render the grantee's interest thereby acquired anything less than a fee. The one cited precedent which, at first blush, seems to afford support to appellant's position at this point, is *Buffalo City Cemetery v. City of Buffalo*, 46 N. Y. 503, where a special assessment upon the property of a cemetery association was sustained. But, on turning to the statute of New York under which that association was organized, and upon which that decision was based, we find it to be quite identical with the city ordinance we had to consider in the *Anderson* case, and that, because of the many restrictions imposed by that statute, the conveyances to purchasers did "no more than to confer on the holder of a lot a right to use it for the purposes of interment," and that no such estate was thereby granted "as to exclude the general proprietorship of the association." We have in this state no such statute. In the *Anderson* case, as we have already seen, the cemetery was owned by the city, which, by its ordinances and deeds of conveyance, vested the purchaser with no more than a perpetual license to use the lot for burial purposes. Here, however, as we have already said, is no restriction or condition imposed upon the purchaser which is inconsistent with a conveyance to him of the general ownership. The necessary result of this situation is that, as none of the unsold lots

abut upon Iowa Avenue, the town was without authority' to lay a special assessment upon the plaintiff's property. The provisions of Code Supplement, 1913, Section 792-g, by which the council may properly assess the cost of an' improvement not only on abutting property, but on an en- larged area extending from the street one half way to the next street, not exceeding 300 feet, are by the terms of the law limited to such improvements as provided for by Sec- tion 792 of the Code and amendments thereto and supple- mentary thereof. This section, as we have seen, is found in Chapter 7 of Title V of the Code, and has no application to the construction of sidewalks.

5. MUNICIPAL CORPORATIONS: public improve- ments: assess- ments: injunc- tion to restrain collection.

The town being without authority in any event to levy the assessment upon or sell the plaintiff's property under the cir- cumstances shown, the courts will entertain a suit in equity to have such assessment va- cated and its collection restrained. The objection to the assessment does not go to the mere questions of regularity in the proceedings where the remedy would doubtless be by appeal, but to the point that the city has no power, under any form of procedure, to impose an assessment on this property for the construction of the walk.

III. Whether any of the lots in the plat constitute abutting property within the meaning of the law, we are not here called upon to decide, as none of the owners hold- ing lots in the range of blocks nearest the street are parties to this action. Even these lots are separated from the street by a cemetery street, or drive, 16 feet wide. The sale of the lots in accordance with the plat doubtless operated as a ded- ication of the streets and alleys of such plat to the general use of the lot owners, if not of the public generally, as a means of access to the various parts of the grounds. Be- tween the 16-foot strip or drive in front of the first range of blocks and the line of Iowa Street, is the strip 4 feet

wide, which seems to be no part of the platted cemetery. The fence which encloses the cemetery leaves this strip on the outside, while the sidewalk in question follows the street line. Between the fence and the walk stretches this unplatted remnant of land, extending along the entire front. This is undoubtedly abutting property, and, if appellant deems it of sufficient value to justify the levying of an assessment thereon, this decision will not prevent such action on its part.

IV. In view of the somewhat unusual

6. MUNICIPAL COR-
PORATIONS: pub-
lic improve-
ments: assess-
ments: assess-
ments against
cemeteries.

and interesting character of this case, we have avoided any consideration of the effect of the statute which exempts cemeteries from taxation, preferring to let that question pass until a case arises where its decision is necessary and full argument has been had. We are aware of the well-established rule that, ordinarily, exemption from general taxation does not include exemption from special assessment, but the inquiry still remains whether cemeteries are not in a class by themselves, and whether, under the established principles of the common law and the usages of all civilized peoples, ground set apart for the burial of the dead is not impliedly exempted from the burdens imposed by law upon property in general, unless it be where the legislature has otherwise clearly and unmistakably provided.

If it shall finally be held that such property is liable to special assessment of this kind, it will then be worth while to consider just how the town or city may enforce the assessment when made. May it sell the property? Will the purchaser thereby acquire a title to the lots entitling him to deny right of burial therein and authorizing him to obliterate the graves, destroy the monuments there erected, disinter and remove the dead, and make use or sale of the premises for residence or business purposes?

That the state, in the exercise of its sovereign power, by legislative enactment can thus violate the sanctity with which burial grounds have been clothed by all Christendom from time immemorial, may be admitted, but such unnatural intent should not be left to mere inference.

Finding then, as we do, that the right of the town to levy special assessments for the construction of sidewalks is limited to the property abutting on the street so improved, and that the cemetery property owned by the plaintiff does not abut on the street for the improvement of which the assessment is laid, the finding and conclusion of the trial court that such assessment should be held void and its enforcement be perpetually enjoined must be sustained, and the decree appealed from is therefore—*Affirmed*.

GAYNOR, C. J., EVANS and PRESTON, JJ., concur.